**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CHKRS, LLC,**

    **Plaintiff,**

  **v.**         **Civil Action 2:18-cv-1366**
              **Magistrate Judge Jolson**

**THE CITY OF DUBLIN, OHIO, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 10), Plaintiff's

Motion for Leave to File Amended Complaint (Doc. 13), and Plaintiff's Second Motion for Leave

to File Amended Complaint (Doc. 24).  For the reasons that follow, Plaintiff's Second Motion for

Leave to File Amended Complaint (Doc. 24) is **GRANTED** conditioned on the terms set forth in

this Opinion and Order.  Further, Defendants' Motion to Dismiss (Doc. 10) and Plaintiff's First

Motion for Leave to File Amended Complaint (Doc. 13) are **DENIED as moot**.

## I.  BACKGROUND

This case concerns construction work performed by Defendants on Plaintiff's driveway.

Plaintiff is the current owner and prior tenant of 6310 Riverside Drive in Dublin, Ohio.  (Doc. 24,

Proposed Am. Compl., ¶ 2).  Defendants are the City of Dublin, Ohio and Dana McDaniel,

Dublin's City Manager.  (*Id.* at 1).

In July 2015, Plaintiff entered into a three-year lease (the "Lease") with an option to

purchase the property at 6310 Riverside Drive (the "Property").  (*Id.*, ¶ 15).  Riverside Drive is a

major road connecting Defendant Dublin to downtown Columbus, Ohio.  In relevant part, it runs

North-South along the Scioto River. The Property abuts Riverside Drive on the east side and is

just south of the intersection of Riverside Drive and State Route 161.  The Property's driveway

runs East-West to provide ingress and egress to Riverside Drive.



(*Id.*, ¶ 44).

Several months later in September 2015, Defendant Dublin "sued to appropriate a

permanent bike path easement and a temporary construction easement" on the Property.  (*Id.*, ¶ 17).

The parties—along with the then current owner of the Property, Karen Friedman—litigated the

appropriation in the Franklin County Court of Common Pleas, Ohio Tenth District Court of

Appeals, and Ohio Supreme Court (the "State Court Action").  (*Id.*, ¶¶ 17–22, 34, 37–39).

While the State Court Action was pending, in November 2015, Defendant Dublin began

construction on the Property and "over several months, cleared and regraded the property;

constructed a wall separating the property from the bike path and the street that obstructed visibility

of pedestrians and bicycles on the bike path, and vehicles on Riverside Drive; and removed the

existing driveway access to Riverside Drive."  (*Id.*, ¶ 11).  According to Plaintiff, the driveway

was not part of the appropriation litigated in the State Court Action.  (*Id.*, ¶ 12).

Relevant here is the portion of Plaintiff's driveway and related improvements in between Riverside Drive to the west and the bike path to the east (the "Driveway"). (*See id.*, ¶ 2 ("The section of driveway, at issue, is in the right of way granted for a highway easement.")). A highway easement on the Property encompasses the Driveway. (*Id.*). In removing the Driveway, Defendant Dublin "relocated the driveway without notice or an opportunity to be heard" and "failed to comply with its Codified Ordinances regarding driveway improvements and Ohio Department of Transportation requirements regarding driveway access on State highways." (*Id.*, ¶ 12). Defendant Dublin subsequently altered the Driveway on two additional occasions in 2016, changing the grade of the land and moving the Driveway itself. (*Id.*, ¶¶ 42–44).

As a result of Defendant Dublin's actions, Plaintiff alleges, the Driveway "is unsafe." (*Id.*, ¶ 48). And "[a] vehicle entering from Riverside Drive and ascending to the bike path cannot see anyone approaching the driveway from the south." (*Id.*). Plaintiff further alleges that the Driveway's slope does not meet ODOT's maximum recommended driveway slope or recommended maximum intersection angle. (*Id.*, ¶ 49).

Plaintiff filed a four-count Complaint under 42 U.S.C. § 1983 on November 2, 2018. (Doc. 2). It alleged violations of its Fourth, Fifth, and Fourteenth Amendment rights based on Defendants' alleged seizure and removal of the Driveway. (*See generally id.*). Defendants subsequently filed a Motion to Dismiss (Doc. 10), and Plaintiff filed a Motion for Leave to File Amended Complaint (Doc. 13).

After the Supreme Court issued its decision in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), Plaintiff filed its Second Motion for Leave to File Amended Complaint (Doc. 24). That Motion seeks to add a takings claims consistent with *Knick* in addition to its procedural and substantive due process claims under the Fourteenth Amendment. (Doc. 24, ¶¶ 68–76). It

also drops two claims included in the original Complaint (Doc. 2) and the initial proposed Amended Complaint (Doc. 13): a Fourth Amendment claim for illegal seizure of property and a Fourteenth Amendment equal protection claim. The Motions are fully briefed and ripe for resolution.

## II.     SECOND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (Doc. 24)

### A.  Standard of Review

Trial courts enjoy broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). When a party seeks leave of court to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). In interpreting this Rule, "[i]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation and internal quotation marks omitted).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, "[o]nce a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)." *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008) (citing *Leary v. Daeschner*, 349 F.3d 888, 906–07 (6th Cir. 2003)). "[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party

acted diligently in attempting to meet the deadline set forth in the pretrial order." *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at \*2 (S.D. Ohio June 8, 2007). The Court must also consider "the potential prejudice to the nonmovant." *Leary*, 349 F.3d at 909. Because the deadline for amending the pleadings has passed (*see* Doc. 18), the Court considers both Rules 15 and 16 in ruling on Plaintiff's Second Motion for Leave to File Amended Complaint (Doc. 24).

### B. Discussion

Plaintiff requests leave to file its proposed Amended Complaint. (*See* Doc. 24). Defendants argue that Plaintiff's Motion should be denied because: (1) Plaintiff's proposed amendments are futile; (2) Plaintiff has acted in bad faith; (3) Plaintiff has repeatedly failed to cure deficiencies in the Complaint; and (4) Defendants will suffer undue prejudice if Plaintiff's amendments are permitted. The Court addresses each of these arguments in turn.

#### 1. *Good Cause*

Although neither party addresses the Rule 16(b) good cause standard, (*see generally* Docs. 24–26), the Court finds that Plaintiff has satisfied it here. The deadline for motions to amend was June 3, 2019. But on June 21, 2019, the Supreme Court issued its decision in *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), authorizing property owners to bring takings claims in federal court without first exhausting their state remedies. Two weeks later, Plaintiff filed the instant Motion seeking to file the proposed Amended Complaint, which adds a takings claim in light of *Knick*. Because *Knick* was not issued prior to the deadline for amendments, Plaintiff demonstrated the necessary diligence to establish good cause by promptly filing the proposed Amended Complaint within weeks of *Knick*'s issuance. The Court, therefore, turns to the Rule 15 analysis.

## 2. Futility

Although Rule 15 encourages leave to amend be freely granted, a court "need not give leave to amend when doing so would be futile." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). "Amending would be futile if a proposed amendment would not survive a motion to dismiss." *SFS Check*, 774 F.3d at 355 (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 555–56. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555).

a. <u>Preclusion</u>

Defendants contend that Plaintiff's claims are barred by the doctrine of res judicata. (*See* Doc. 10 at 4–5; Doc. 16 at 8; Doc. 22 at 2–3; Doc. 25 at 7–8). Specifically, they argue that issue preclusion prevents Plaintiff from relitigating the exact same facts and legal issues that were raised in the State Court action. (*See, e.g.*, Doc. 10 at 4–5).

Under the Constitution's Full Faith and Credit Clause, and the Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). When a party relies on a prior state court action as the basis for its res judicata argument, courts "look to the state's law to assess the preclusive effect it would attach to that judgment." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citation and internal quotations omitted).

In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citing *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995)). "Issue preclusion … serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *O'Nesti*, 862 N.E.2d at 806 (citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998)). It "applies even if the causes of action differ." *O'Nesti*, 862 N.E.2d at 806 (citing *Fort Frye Teachers Assn.*, 692 N.E.2d at 144).

Issue preclusion has four elements under Ohio law:

(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;

(2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

(4) The issue must have been identical to the issue involved in the prior suit.

*Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 531 (6th Cir. 2018) (citing *Monahan v. Eagle Picher Indus., Inc.*, 486 N.E.2d 1165, 1168 (Ohio Ct. App. 1984)). "The party asserting the defense bears the burden of proof." *Boggs*, 655 F.3d at 520 (citing *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009)).

Defendants have not met their burden of proof here. They maintain that Plaintiff is using this case to relitigate the appropriation of the bike path easement, which was already deemed lawful in the State Court Action. (*See, e.g.*, Doc. 10 at 5 ("The facts, arguments, and legal issues CHKRS continues to raise are all related to the same transaction and occurrence – the City's lawful partial appropriation of CHKRS's property. Those facts, arguments, and legal issues were definitively determined by the state trial court and appellate courts."); Doc. 12 at 4 ("Despite CHKRS's attempt to improperly alter its claims to avoid dismissal, CHKRS spends almost the entirety of its Memorandum in Opposition [Doc. 11] addressing the exact same facts, arguments, and legal issues CHKRS raised in the City's lawful partial appropriation of CHKRS's property. And CHKRS does not dispute that those facts, arguments, and legal issues were definitively determined by the state trial court and appellate courts."); Doc. 25 at 8 ("[U]nder *Knick*, CHKRS is still precluded from re-litigating the state court appropriation action.")).

But a fair reading of Plaintiff's proposed Amended Complaint demonstrates otherwise. According to Plaintiff, "Dublin illegally seized CHKRS driveway twice, and relocated it, in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution." (Doc. 24, ¶

1). The Driveway, Plaintiff alleges, "is not part of the property Dublin appropriated." (*Id.*, ¶ 12). While Defendants initially "ripp[ed] out the existing driveway" in early November 2015, they subsequently re-entered Plaintiff's property on two separate occasions, once in late July 2016 and once in November 2016. (*Id.*, ¶¶ 42–44). On both of those occasions, Defendants performed additional construction work on the Driveway, altering it to the point that it "is unsafe." (*Id.*, ¶¶ 42–48). As a result, Plaintiff alleges that Defendants committed procedural and substantive due process violations in violation of the Fifth and Fourteenth Amendments and a Takings Clause violation under the Fifth Amendment. (*Id.*, ¶¶ 68–76). In short, the proposed Amended Complaint challenges Defendants' alleged taking of Plaintiff's Driveway, not the appropriation of the bike path easement. (*See id.*, ¶ 40 ("Dublin had no right to seize CHKRS driveway and/or to quick take the driveway west of the bike path easement as it was not part of the appropriation action.")).

In fairness to Defendants, Plaintiff's allegations have changed over time. *Compare CHKRS, LLC v. City of Dublin, Ohio et al.*, 2:18-cv-00611-MHW-KAJ, Doc. 1, ¶ 1 ("The City of Dublin seized the frontage of the property at 6310 Riverside Drive for a bike path, under a claim of the right to quick take the property for road repairs. Dublin lacks the right to quick take property for a bike path and has no right to appropriate property for a bike path under Ohio law.") *with CHKRS, LLC v. City of Dublin, Ohio et al.*, 2:18-cv-1366-KAJ, Doc. 24, ¶ 1 ("CHKRS is before this Court to obtain the return of its property. Dublin illegally seized CHKRS driveway twice, and relocated it, in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution."). And a reader who skimmed the proposed Amended Complaint could be forgiven for thinking that the bike path easement was the subject of Plaintiff's claims given the repeated references to Defendants' appropriation of the same and the related State Court Action. (*See e.g.*,

Doc. 24, ¶ 10, ¶¶ 16–25, ¶¶ 29–39).  Yet, after a careful read, the Court finds that Plaintiff is not attempting to relitigate those issues here.

The question then is whether Plaintiff is attempting to relitigate issues related to Defendants' alleged alteration of the Driveway.  Defendants have not demonstrated as much.  Rather, they offer cursory arguments that the issues underlying this case "were definitively determined by the state trial court and appellate courts," (Doc. 10 at 5), based on stray references to the Driveway in Plaintiff's filings in the State Court Action, (*see, e.g.*, *id.* ("CHKRS argued that the City 'severely altered the grade of the property and the driveway . . . .'"); Doc. 12 at 3 ("Below is a direct quote from CHKRS's Reply Brief in the Tenth District Court of Appeals," which stated, among other things, "[t]he City has come on to CHKRS property and has irreparably damaged the land, the stone walls and pillars, and ingress and egress to the property.")).  Defendants have not demonstrated that these issues were "admitted or actually tried and decided" and that they were "necessary to the final judgment" in the State Court Action, *Bowman*, 756 F. App'x at 531 (citing *Monahan*, 486 N.E.2d at 1168).  Nor have they shown that the issues underlying the proposed Amended Complaint were "identical to the issue[s] involved in the prior suit," *Bowman*, 756 F. App'x at 531 (citing *Monahan*, 486 N.E.2d at 1168).  The Court declines to develop those arguments on behalf of Defendants.  They have, therefore, failed to meet their burden to support the application of issue preclusion at this stage of the proceedings.

### b.  Due Process Claims

The Fourteenth Amendment prohibits "any State" from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The clause has both a substantive and a procedural component."  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  "Procedural due process is traditionally viewed as the requirement that

the government provide a 'fair procedure' when depriving someone of life, liberty, or property; substantive due process 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Plaintiff alleges that Defendants violated its procedural and substantive due process rights, which Defendants dispute.

### i. Procedural Due Process

Defendants challenge Plaintiff's procedural due process claim on multiple grounds. First, they argue that Plaintiff has not alleged sufficient facts to establish that it was deprived of a property interest protected by the Due Process Clause of the Fourteenth Amendment. (Doc. 12 at 5–6; Doc. 22 at 3–5). Second, even assuming that Plaintiff was deprived of a protected interest, they contend that Plaintiff was afforded adequate procedural rights before any deprivation occurred. (Doc. 10 at 8–9; Doc. 22 at 5–6). Third, they assert, Plaintiff has failed to allege facts demonstrating that the property deprivation resulted from either: (1) an established state procedure that itself violates due process rights, or (2) a random and unauthorized act causing a loss for which available state remedies would not adequately compensate the plaintiff. (Doc. 22 at 6–7).

To establish a procedural due process claim, a plaintiff must establish three elements: "(1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019) (citing *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008)). "[T]he Supreme Court has held that the hallmark of due process is that a deprivation of a property interest must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cahoo*, 912 F.3d at 901 (citation and quotations omitted).

To start, Defendants argue that Plaintiff has failed to allege facts demonstrating that it was deprived of a protected property interest. "Property interests … are not created by the Constitution." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* "For example, '[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances.'" *Crosby v. Univ. of Kentucky*, 863 F.3d 545, 552 (6th Cir. 2017), *cert. denied sub nom. Crosby v. Capilouto*, 138 S. Ct. 741, 199 L. Ed. 2d 607 (2018) (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004)).

Under Ohio law, "[a]n owner of property abutting on a public highway possesses … a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708–09 (6th Cir. 2005) (quoting *State ex rel. Merritt v. Linzell*, 126 N.E.2d 53, 54 (Ohio 1955)). "[T]he state may regulate a property owner's easement of access without compensation as long as there is no denial of ingress or egress." *Warren*, 411 F.3d at 709 (citing *Castrataro v. City of Lyndhurst*, No. 60901, 1992 WL 209578, *2 (Ohio Ct. App. Aug. 27, 1992)). "However, a landowner's property interest is infringed even when a government blocks off only part of the property's access to public roads." *Warren*, 411 F.3d at 709 (collecting cases).

Two Sixth Circuit decisions offer guidance to the Court here. In *Warren*, the plaintiffs operated a Dairy Queen near an intersection in Athens, Ohio. 411 F.3d at 700. After the plaintiffs constructed a drive thru at their restaurant, the City of Athens received "numerous complaints …

about traffic congestion and noise." *Id.* at 702. To address these complaints, the City placed a barricade across one of the two entrances to the Dairy Queen, preventing customers from using the drive thru and preventing garbage trucks from picking up trash, recycling, and waste grease. *Id.* The plaintiffs argued, among other things, that the City's actions constituted a procedural due process violation because it failed to provide them with notice and a hearing before depriving it of its protected interest in ingress and egress to their property.

The Sixth Circuit agreed. *See id.* at 708–10. Recognizing the plaintiffs' well-established interested in ingress and egress to their property under Ohio law, it emphasized that "a landowner's property interest is infringed even when a government blocks off only part of the property's access to public roads." *Id.* at 709 (collecting cases). Because the City's barriers blocked off "one of the two means of access to the Dairy Queen," and because the plaintiffs bore "the sole burden of the barriers," the Court concluded that the City "clearly deprived the Warrens of a property interest." *Id.* at 709.

In contrast, in *Wayne Watson Enterprises, LLC v. City of Cambridge*, the Sixth Circuit concluded that the plaintiffs were not deprived of a protected property interest based on the City of Cambridge's construction of an access road near their property. 751 F. App'x 760 (6th Cir. 2018). The plaintiffs operated a car wash business next door to a Wendy's restaurant, both of which were fronted by a public right-of-way. *Id.* at 761. To improve customers' access to Wendy's, its operators submitted a proposal connecting the public right-of-way to an access road, which the City subsequently approved. *Id.* at 761–62. The plaintiffs moved to enjoin the construction of the access road and sued the City for, among other things, violating its procedural due process rights. *Id.* at 762. The district court rejected the plaintiffs' procedural due process

claim, finding that the plaintiffs had failed to establish a protected property interest. *See id.* The Sixth Circuit affirmed that finding. *See id.* at 763–64.

As in *Warren*, the Sixth Circuit began its analysis by recognizing the plaintiffs' interest in a private right of access, for the purposes of ingress and egress, from private property to a public road. *Id.* at 764 (citing *Merritt*, 126 N.E.2d at 55–56). But the Court noted the limits of that protected interest:

> Mere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient.

*Wayne Watson Enterprises*, 751 F. App'x at 764 (quoting *Merritt*, 126 N.E.2d at 56). In other words, "if Watson's and his customers' access to and from his business via the public right-of-way were 'substantially impaired,' he would have a property interest at stake; on the other hand, if the access road merely made travel inconvenient, that would not trigger this property interest." *Wayne Watson Enterprises*, 751 F. App'x at 764. Because it was "undisputed" that the plaintiffs' customers would "not be blocked from accessing his business from either State Route 209 or the public right-of-way," the Court concluded that the construction of the access road was a "possible inconvenience, not an impairment of a property interest." *Id.*

*Warren* controls the Court's decision here. Like the plaintiffs in *Warren*, 411 F.3d at 701, Plaintiff alleges that it has two ways of ingress and egress to the Property, (*see* Doc. 24, ¶¶ 1–2, 52, 69). Prior to Defendants' actions, its primary means of ingress and egress was the driveway connected to Riverside Drive. (*See id.*, ¶¶ 1–2). Ingress and egress to the Property is also available by "an approximately 800' long rough dirt and stone easement to Martin Drive, which is limited to a single household use." (*Id.* ¶ 52). Plaintiff alleges that Defendants' actions have deprived it

of "a safe useable access to Riverside Drive."  (Doc. 24, ¶ 1; *see also id.*, ¶ 25 ("Since Dublin

entered the property in early November 2015, when it began ripping out the existing driveway it

has not been possible to safely enter or exit the property on the driveway."); *id.*, ¶ 69 ("CHKRS

had access to and from Riverside Drive before Dublin entered the property and removed the

driveway in late July 2016.")).  In other words, like the City in *Warren*, Defendants' actions

blocked off "one of the two means of access to" the Property.  411 F.3d at 709.  And, like *Warren*,

the burden of Defendants' actions fell solely on Plaintiff, rather than the general public.  *Id.*

Plaintiff has, therefore, alleged sufficient facts to establish that he was deprived of a protected

interest.  *See id.* ("[T]he City of Athens clearly deprived the Warrens of a property interest by

erecting barricades across one of the two means of access to their Dairy Queen.").

Defendants' arguments to the contrary are unpersuasive.  They contend that this case is

analogous to *Wayne Watson Enterprises*, not *Warren*, (Doc. 22 at 4–5), because Plaintiff does not

allege that Defendant "physically denied CHKRS access to its property nor erected physical

barriers as was the case in Warren," (*id.* at 5).  But at this stage of proceedings, the Court must

construe the proposed Amended Complaint in Plaintiff's favor and accept all well-pleaded

allegations as true.  Applying that standard, the proposed Amended Complaint alleges enough.

(*See* Doc. 24, ¶¶ 1, 25, 69).

Similarly unpersuasive is the argument that, "unlike the case in *Warren*," Plaintiff "was

not the fee owner of the property at the time of the driveway construction."  (Doc. 22 at 5).  The

upshot of Defendants' argument is that Plaintiff lacks a protected interest in ingress and egress to

the Property because Plaintiff was a lessee, rather than the owner, of the Property.  But Defendants

do not develop this argument, (*see id.*), and case law does not support it, *see State ex rel. Hilltop*

*Basic Resources, Inc. v. Cincinnati*, 886 N.E.2d 839, 845 (Ohio 2008) ("[T]he court of appeals

properly concluded that the city's denial of the permit for a curb cut and driveway construction substantially and unreasonably interfered with Queensgate's [the lessor's] right of access to the abutting public road.").

Defendants also argue that they afforded Plaintiff adequate procedural protections before any alleged deprivation of Plaintiff's protected interest. Initially, they argue that the State Court Action provided Plaintiff with adequate notice and an opportunity to be heard about the issues raised in this case. (Doc. 10 at 8–9). But that argument assumes the instant case is an attempt to relitigate the State Court Action, and the Court has already concluded that this assumption is erroneous. *See supra* Section II(B)(2)(a).

Defendants further contend that the highway easement to which the Driveway is subject "undercuts CHKRS's position that it was not provided with notice and an opportunity to be heard." (Doc. 22 at 6). Defendants appear to suggest, because of the highway easement, they were required to provide Plaintiff little, if any, notice before they began work on the Driveway. That does not strike the Court as implausible. But, again, Defendants do little to develop this argument. While Defendants attach a copy of the relevant easement, (*see* Doc. 22-1), they fail to explain its legal significance, (*see* Doc. 22 at 6). The Court declines to develop the argument for Defendants. *See Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009), *aff'd*, 399 F. App'x 62 (6th Cir. 2010) (collecting cases) (holding that undeveloped arguments are waived).

Finally, Defendants assert that Plaintiff's procedural due process claim is futile because it "makes absolutely no allegation in its Proposed Amended Complaint that the City either engaged in a random and unauthorized act, or that CHKRS's purported deprivation resulted from an

established state procedure that itself violates due process rights." (Doc. 22 at 7 (internal quotations omitted)).

"[A] § 1983 plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either: (1) an established state procedure that itself violates due process rights, or (2) a 'random and unauthorized act' causing a loss for which available state remedies would not adequately compensate the plaintiff." *Warren*, 411 F.3d at 709 (quoting *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)). "A plaintiff alleging the first element of this test would not need to demonstrate the inadequacy of state remedies." *Warren*, 411 F.3d at 709 (citing *Moore v. Bd. of Educ. of Johnson City Sch.*, 134 F.3d 781, 785 (6th Cir. 1998)). "If the plaintiff pursues the second line of argument, he must navigate the rule of *Parratt v. Taylor* … , which holds that a state may satisfy procedural due process with only an adequate postdeprivation procedure when the state action was 'random and unauthorized.'" *Warren*, 411 F.3d at 709 (citation omitted). "In this context, 'unauthorized' means that the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law." *Id.* (citing *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)).

The Sixth Circuit "has wisely noted, however, that not all due process challenges can be easily categorized as a direct challenge to an established state procedure or a challenge to random and unauthorized conduct." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014) (citing *Mertik v. Blalock*, 983 F.2d 1353, 1365 (6th Cir. 1993)).

> Specifically, it is not necessarily the case that a due process challenge to state action not involving an established state procedure must automatically come within the *Parratt* and *Hudson* rule governing random and unauthorized acts. Where, as here, a plaintiff claims that the conduct at issue was not random and unauthorized but also does not challenge the adequacy of an established state procedure, we undertake a careful scrutiny of the three *Zinermon* factors to determine whether the *Parratt* doctrine applies.

> Courts may dismiss a procedural due process claim if the state provides an adequate postdeprivation remedy and (1) the deprivation was unpredictable or random; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.

*Valentino*, 756 F.3d at 907 (internal citations and quotations omitted).

To the extent Defendants argue that Plaintiff failed to categorize its procedural due process claim as a direct challenge to an established state procedure or a challenge to random and unauthorized conduct, that is not fatal to its claim. *See id.* (citing *Mertik*, 983 F.2d at 1365). Further, to the extent that Defendants argue that Plaintiff failed to allege facts establishing a claim under either of those standards, they have not developed that argument. (*See* Doc. 22 at 7). Even if they had not waived this argument, *see Abdulsalaam*, 637 F. Supp. 2d at 576 (collecting cases), it fails on the merits. Plaintiff has alleged that it was deprived of a protected property interest without pre-deprivation notice and a hearing. (Doc. 24, ¶¶ 12, 26, 43, 62). And it has explicitly alleged that it has no adequate remedy at law to challenge that deprivation. (*Id.*, ¶ 64). "Whether seen as an attack on an established state procedure or as an attack on a 'random and unauthorized' act," Plaintiff's claim is "not subject to the *Parratt* rule." *Warren*, 411 F.3d at 710. And on the allegations before the Court, "[i]t clearly would not have been 'impossible' for the City to grant a predeprivation hearing to" Plaintiff, *id.* (citation omitted). "Moreover, even if the *Parratt* rule did apply, it is not clear that any state remedies were available to" Plaintiff. *Id.*

Defendants have, therefore, not demonstrated that Plaintiff's procedural due process claim is futile.

### ii. Substantive Due Process

The substantive component of "the Due Process Clause . . . bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon*, 494 U.S. at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). A violation

of substantive due process "occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren*, 411 F.3d at 707–08. A plaintiff must show "arbitrary and capricious action in the *strict* sense," meaning a decision that either lacks a "rational basis" or is "willful and unreasoning, without consideration and in disregard of the facts or circumstances of the case." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221–22 (6th Cir. 1992). "Under this deferential standard of review, it is extremely rare for a federal court to vitiate the action of a [governmental entity] as a violation of substantive due process." *Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 925 (S.D. Ohio 2017), *aff'd*, 751 F. App'x 760 (6th Cir. 2018) (citation, quotations, and alteration omitted); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (holding that "[a] court should not interfere with local" land use "decisions unless the locality's action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare." (citation and quotations omitted)).

Construing the proposed Amended Complaint in Plaintiff's favor, it alleges that Defendants entered the Property on two separate occasions, (Doc. 24, ¶¶ 42–44), "ripped out the existing driveway," (*id.*, ¶ 25), and made it impossible "to safely enter or exit the property on the driveway," (*id.*). As part of their construction work on the Driveway, Defendants "removed the old stone wall which had been rebuilt by Smith, destroyed the old stone pillars, and removed stone and dirt from the hill west of the bike path lowering the grade and destabilizing the hill." (*Id.*, ¶ 42). Defendants "did not institute proceedings under state law" before destroying the Driveway, and they "did not have council authorization to remove" it either. (*Id.*, ¶ 43). Defendants' actions were not for the purpose of "road repairs." (*Id.*, ¶ 63).

Having already concluded that, as alleged, Plaintiff has pled a deprivation of a constitutionally protected property interest, the remaining question is whether Defendants' actions were arbitrary and capricious. *Warren*, 411 F.3d at 707–08. And that is a close call, even under Rule 8's liberal standard. But accepting Plaintiff's allegations as true (even if doubtful in fact), *Twombly*, 550 U.S. at 555, the allegations meet that high bar at this stage of the proceedings. According to Plaintiff, Defendants destroyed the Driveway and its related improvements without legal authority and for a purpose unrelated to public welfare. In the Court's view, as alleged, these actions were "willful and unreasoning," and therefore violative of Plaintiff's substantive due process rights.

The Court, however, notes what is *not* in the record at this point. Construction related to the Driveway was presumably performed pursuant to some legal authority, whether it be a state statute or an act of City Council. Further, Defendants presumably performed the construction related to the Driveway for some purpose with a "substantial relation to the public health, the public morals, the public safety or the public welfare," *Braun*, 519 F.3d at 574 (citations and quotations omitted). At this stage, Defendants could have presented the Court documents or information subject to judicial notice that would have demonstrated as much. But, because they have not, Plaintiff may proceed with its substantive due process claim. The Court, however, is skeptical that Plaintiff's claim will ultimately succeed considering the Sixth Circuit's demanding standard for such a claim. *See id.* (holding that "[a] court should not interfere with local" land use "decisions unless the locality's action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare" (citation and quotations omitted)).

### c. Defendant McDaniel

Next, Defendants argue that Plaintiff's claims against Defendant McDaniel in his individual and official capacity should be dismissed because: (1) Plaintiff offers only conclusory allegations to establish Defendant McDaniel's liability; (2) Defendant McDaniel is entitled to qualified immunity. (Doc. 10 at 11–13; Doc. 12 at 7–8).

Resolving these arguments is made difficult by the parties' cursory briefing on these issues. To be fair, Defendants briefed this issue in relation to their Motion to Dismiss, which concerned the original Complaint (Doc. 2), rather than the proposed Amended Complaint (Doc. 24) before the Court now. (*See* Docs. 10, 12). Many of the limited allegations in the original Complaint regarding Defendant McDaniel were, in fact, conclusory. (*See, e.g.*, Doc. 2, ¶ 31 ("Dana McDaniel, Dublin's City Manager, is its chief administrative officer and is responsible for the unlawful seizure of CHKRS property."). But the proposed Amended Complaint contains new, non-conclusory allegations regarding Defendant McDaniel's involvement in Defendant Dublin's misconduct. (*See, e.g.*, Doc. 24, ¶ 51 ("McDaniel also approved the installation of the current driveway")). And Defendants have not addressed these additional allegations in their subsequent briefing. The Court concludes that the allegations are sufficient to state a claim.

Nor is Defendant McDaniel entitled to qualified immunity at this stage of the proceedings. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Watson v. Pearson*, 928 F.3d 507, 510 (6th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "To determine whether an officer is entitled to qualified immunity," courts "evaluate two independent prongs: whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident." *Watson*, 928 F.3d at 510 (citing *Pearson*, 555 U.S. at 232)

Of note, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Defendants have not offered the Court any reason to depart from that general rule. The Court has already concluded that the proposed Amended Complaint contains sufficient factual allegations to establish that Defendants' conduct violated Plaintiff's constitutional rights. *See supra* Section II(B)(2)(b). And while Defendants have baldly asserted that "the constitutional right that was allegedly violated was 'not clearly established,'" (Doc. 10 at 11–12), they have not developed this argument or cited any authority to support it, (*see id.*). Qualified immunity does not protect Defendant McDaniel at this stage of proceedings.

### 3. Bad faith

Whether or not Plaintiff's claims are futile, Defendants insist that Plaintiff has acted in bad faith by repeatedly changing its factual allegations and legal claims to avoid dismissal. (*See* Doc. 25 at 4–6). Bad faith is a fact-intensive inquiry and cannot be determined by reliance on bright-line rules. To borrow from Justice Stewart, you know it when you see it. *See Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring). The Court does not see it here.

Three basic principles guide the Court's decision. First, "case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman*, 896 F.3d at 736 (citation and internal quotation marks omitted). In this context, multiple amendments of the complaint do not, by themselves, support a finding of bad faith. But the general rule in favor of liberal amendments

is not without limits, and further attempts at amendment by Plaintiff may lead the Court to reach a different conclusion with respect to a finding of bad faith.

Second, a "plaintiff typically will not be precluded from amending a defective complaint in order to state a claim on which relief can be granted." 6 Charles Alan Wright and Arthur Miller, Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2019). Defendants argue that Plaintiff has engaged "in tactical maneuvers to force the court to consider various theories seriatim . . . as demonstrated by its pattern of seeking to change its allegations after reviewing the City's legal argument." (Doc. 25 at 4). But in the three different complaints filed in this action, Plaintiff has consistently alleged that Defendants violated his constitutional rights by altering the Driveway. (*See* Doc. 2, ¶ 1 "CHKRS is before this Court to obtain the return of its property illegally seized by the City of Dublin, Ohio in violation of the Fourth Amendment of the U.S. Constitution and the Fourteenth Amendment of the U.S. Constitution. Dublin has twice seized CHKRS driveway and relocated it."); Doc. 13, ¶ 1 ("CHKRS is before this Court to obtain the return of its property. Dublin illegally seized CHKRS driveway twice, and relocated it, in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution."); Doc. 24, ¶ 1 ("CHKRS is before this Court to obtain the return of its property. Dublin illegally seized CHKRS driveway twice, and relocated it, in violation of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution."). To the extent Plaintiff has added substantive factual allegations in response to Defendants' Motion to Dismiss, the Court does not view those changes as evidence of bad faith. *See* 6 Charles Alan Wright and Arthur Miller, Fed. Prac. & Proc. Civ. § 1487 (3d ed. 2019).

Finally, "[w]hen the court inquires into the good faith of the moving party, it typically will take account of the movant's delay in seeking the amendment." *Id.* The initial Amended Complaint was filed well in advance of the deadline for motions to amend, and the current

proposed Amended Complaint was promptly filed after the Supreme Court's decision in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019), which permits Plaintiff to proceed with a takings claim in federal court. The lack of delay present here is in stark contrast to other cases in which courts have made a finding of bad faith. *See, e.g.*, *Indus. Assets, Inc. v. Capital Equip. Sales Co.*, 116 F.3d 1480, 1997 WL 359061, at *3–4 (6th Cir. 1997) (holding that a plaintiff, who moved to amend in response to a summary judgment motion, acted in bad faith by failing to take advantage of an earlier opportunity to amend and instead relying on a previous "claim that it knew was improper, but which was more favorable than the appropriate cause of action"); *Cotton Bros. Baking Co., Inc. v. Industrial Risk Insurers*, 941 F.2d 380 (5th Cir. 1991) (affirming district court's denial of amendment of complaint to change the name of defendant from the subsidiary corporation to the parent corporation as an eleventh-hour ploy to defeat a compulsory counterclaim by disclaiming the existence of a contract that the equipment supplier had spent three and a half years relying on in litigation); *Sandcrest Outpatient Servs. v. Cumberland Cnty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1148–49 (4th Cir. 1988) (affirming denial of motion to amend because amendment would have forced the defendants to alter their litigation strategy and appeared "prompted only by the concern that [the plaintiff] would lose on the summary judgment motion"); *Trans Video Electronics, Ltd. v. Sony Electronics, Inc.*, 278 F.R.D. 505 (N.D. Cal. 2011), *aff'd per curiam*, 475 F. App'x 334 (Fed. Cir. 2012) (denying leave to amend the complaint to add a new patent-infringement claim because (i) the motion had been made only after an adverse claim-construction order had been issued against the patentee and after briefing had closed on the competitor's motion for summary judgment on the patentee's existing claim, (ii) the patentee had made a tactical decision not to include the "new" claim at the outset of the litigation and shifted its strategy only after the "writing was on the wall," and (iii) the motion had been taken as a "last-ditch" attempt to

avoid dismissal of the action in its entirety). The timing of Plaintiff's proposed amendments, therefore, does not weigh in favor of a finding of bad faith.

Ultimately, where Defendants see evidence of Plaintiff's alleged bad faith, the Court sees evidence of careless drafting and a lack of attention to detail. An example illustrates as much. In the original Complaint, Plaintiff's claims were based on Defendants' alleged actions in altering its driveway to the east of the bike path easement. (*See, e.g.*, Doc. 2, ¶ 2 ("Dublin also removed the existing driveway access to Riverside Drive. This section of driveway, east of the bike path easement, was not part of the property Dublin sought to appropriate."); *id.*, ¶ 7. ("The driveway entrance on Riverside Drive is east of the property Dublin appropriated. CHKRs was not provided notice and an opportunity to be heard before the City ripped out its entrance on Riverside Drive a second time.")). But these allegations make no sense—the existing driveway access to Riverside Drive is the section of the driveway *west* of the bike path easement. Plaintiff corrected this mistake in its initial Amended Complaint. (*See, e.g.*, Doc. 13, ¶ 4 (alleging that Defendants "removed the existing driveway access to Riverside Drive, including the section of driveway west of the bike path easements in the right of way."); *id.*, ¶ 39 ("Dublin had no right to seize CHKRS driveway and/or to quick take the driveway west of the bike path easement as it was not part of the appropriation action.")). To be sure, this mistake was careless, and the Court is sure that mistakes like this made it difficult for Defendants to respond to Plaintiff's allegations. But it is not evidence of bad faith. Because other changes to Plaintiff's complaints were similar in nature, or legitimate attempts to support its claims with additional factual allegations, a finding of bad faith is not justified here.

### 4. Failure to cure deficiencies

Defendants argue that Plaintiff has repeatedly failed to cure legal deficiencies in its pleadings "despite having at least three proverbial bites at the apple." (Doc. 25 at 6). As discussed above, Defendants have not shown that the claims raised in Plaintiff's proposed Amended Complaint are futile. *See supra* Section II(B)(2). Although the original Complaint had several significant legal deficiencies, *see infra* Section II(B)(6), the proposed Amended Complaint addresses those. Defendants' argument is, therefore, meritless.

### 5. Undue prejudice

Finally, Defendants argue that they will "be unduly prejudiced despite the fact the parties have not engaged in any discovery because [they] will be forced to respond to yet another filing and incur costs in doing so." (Doc. 25 at 6).

> In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

*Rogers v. I.R.S.*, 822 F.3d 854, 857 (6th Cir. 2016) (quoting *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994)).

These factors do not support a finding of undue prejudice here. First, Plaintiff's claims in the proposed Amended Complaint all center on Defendants' alleged actions related to the alteration of the Driveway. Regardless of the introduction of the takings claim and the removal of the Fourth Amendment and Equal Protection claims, the scope of discovery and trial in this case would essentially be the same for any of the complaints filed in this action. So granting leave to amend will not "require [Defendants] to expend significant additional resources to conduct discovery and prepare for trial," *Rogers*, 822 F.3d at 857.

Second, as Defendants noted in their Response in Opposition, discovery has not yet begun in this case. (Doc. 25 at 6). And, as the Court has concluded, the proposed Amended Complaint will not significantly expand the scope of this case. As a result, granting leave to amend will not significantly delay the resolution of this case.

Finally, no party has suggested that granting leave to amend will prevent them from filing a timely action in another jurisdiction. This factor, too, weighs against a finding of undue prejudice.

At base, Defendants' concern is that they will "suffer the inherent prejudice of having to defend against Plaintiff's new claims." *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-00427, 2012 WL 1031411, at *3 n.3 (S.D. Ohio Mar. 27, 2012). But "[t]his obligation to defend is not the type of undue prejudice typically considered in deciding whether to allow amendment." *Id.* (citing *Grant v. Target Corp.*, No. 2:10–cv–823, 2012 WL 871093, at *2–3 (S.D. Ohio Mar. 14, 2012)). And Defendants have failed to demonstrate that Plaintiff's amendments will cause undue prejudice.

### 6. Attorney's Fees

Although Defendants have not demonstrated undue prejudice, that does not mean they have suffered no prejudice at all. As the Court has noted, Plaintiff's pleadings reflect careless drafting and a lack of attention to detail. That carelessness has made it difficult for the Court to resolve the pending motions. But, more importantly, it has prejudiced Defendants by requiring them to brief two claims that minimal legal research would have demonstrated are futile. (*See* Doc. 2, ¶¶ 46–49, 56–58 (alleging Fourth Amendment and Equal Protection claims); Doc. 13, ¶¶ 53–57, 64–66 (same)).

Plaintiff's leave to file the proposed Amended Complaint is, therefore, conditioned on compensating Defendants for the attorney's fees they incurred responding to those futile claims. *See Ruschel v. Nestle Holdings, Inc.*, 89 F. App'x 518, 521 (6th Cir. 2004) (citing *Local 783 Allied Indus. Workers of Am. v. Gen. Elec. Co.*, 471 F.2d 751, 756 (6th Cir. 1973)) ("To avoid prejudice to the opposing party, courts are permitted to balance opposing parties' interests by imposing conditions on the applicant's leave to amend."). As detailed below, quick legal research would have made clear that Plaintiff's Fourth Amendment and Equal Protection claims were meritless. And the fact that Plaintiff has dropped those claims from the proposed Amended Complaint does not adequately compensate Defendants for the prejudice they suffered from the inclusion of those claims in earlier complaints. The Court presents the analysis below to demonstrate the futility of the earlier claims raised by Plaintiff.

a. <u>Illegal Seizure – Fourth Amendment</u>

Plaintiff previously asserted that Defendants illegally seized the Driveway in violation of its Fourth Amendment rights. (Doc. 13, ¶¶ 53–57). That claim was futile.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects." As the text makes clear, its protection encompasses certain real property, namely the home. "A 'house,' for Fourth Amendment purposes, is not limited to the structure in which a person lives, but by the same token, it also does not include all the real property surrounding a dwelling." *Collins v. Virginia*, 138 S. Ct. 1663, 1681 (2018) (citing *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *United States v. Dunn*, 480 U.S. 294, 300–301 (1987)). "Instead, a person's 'house' encompasses the dwelling and a circumscribed area of surrounding land that is given the name 'curtilage.'" *Collins*, 138 S. Ct. at 1681 (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)). Areas outside the curtilage are not governed by the Fourth Amendment. *See*

*Collins*, 138 S. Ct. at 1681 ("Land outside the curtilage is called an 'open field,' and a search conducted in that area is not considered a search of a 'house' and is therefore not governed by the Fourth Amendment." (citing *Oliver*, 466 U.S. at 180)); *see also Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 695–96 (W.D. Va. 2015) ("The Fourth Amendment's protections against unreasonable seizures extend to real property … Those protections are, however, limited to the home and its curtilage or the area immediately surrounding and associated with the home." (internal citations and quotations omitted)); *Scott v. Garrard Cty. Fiscal Court*, No. 5:08-CV-273-JMH, 2012 WL 619230, at *1 (E.D. Ky. Feb. 24, 2012) ("Courts have recognized that the Fourth Amendment's protection does not extend to real property beyond a home and its surrounding curtilage." (citing *Oliver*, 466 U.S. at 173)).

"While the boundaries of the curtilage are generally 'clearly marked,' the 'conception defining the curtilage' is at any rate familiar enough that it is 'easily understood from our daily experience.'" *Jardines*, 569 U.S. at 7 (quoting *Oliver*, 466 U.S. at 182 n.12). To determine whether an area is curtilage, courts consider: "(1) the proximity of the area to the home, (2) whether the area is within an enclosure around the home, (3) how that the area is used, and (4) what the owner has done to protect the area from observation by passersby." *Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 561 (6th Cir. 2018), *reh'g denied* (Sept. 25, 2018), *cert. denied*, 139 S. Ct. 1377 (2019) (citing *Dunn*, 480 U.S. at 301). "But these factors are not to be applied mechanically: they are 'useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection.'" *Morgan*, 903 F.3d at 561 (quoting *Dunn*, 480 U.S. at 301).

As the case law above demonstrates, Plaintiff's Driveway is not protected by the Fourth Amendment. First, Plaintiff does not allege that the Driveway is in close proximity to the house. To the contrary, as alleged in the initial Amended Complaint, the Driveway is at the point furthest from the Property's home. (*See* Doc. 13 at 3, 11, 12 (images detailing the layout of the Property)). Second, Plaintiff does not allege that the Driveway "is within an enclosure around the home," *Morgan*, 903 F.3d at 561 (citing *Dunn*, 480 U.S. at 301). Rather than being within an enclosure around the house, the Driveway is an open area adjacent to a major public highway to the west and a public bike path to the east. (*See* Doc. 13 at 3, 11, 12 (images detailing the layout of the Property)). Third, Plaintiff's allegations regarding the use of the Driveway indicate it has both public and private uses. While the Driveway provides Plaintiff's owner access to Riverside Drive, it is also "in the right of way granted for a highway easement." (Doc. 13, ¶ 2). Fourth, Plaintiff does not allege that it has "protect[ed] the area from observation by passersby," *Morgan*, 903 F.3d at 561 (citing *Dunn*, 480 U.S. at 301). Nor can it since the Driveway is readily observable by the public traveling on Riverside Drive or the adjacent bike path. (*See* Doc. 13 at 3, 11, 12 (images detailing the layout of the Property)). In short, the Driveway is not "'so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection.'" *Morgan*, 903 F.3d at 561 (quoting *Dunn*, 480 U.S. at 301).

Because the Driveway is outside the Fourth Amendment's protection, Plaintiff's Fourth Amendment claim was futile.

Plaintiff offered limited legal authority in support of its position, citing *Soldal v. Cook County*, 506 U.S. 56 (1992) and *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993). But that authority corroborates, rather than contradicts, the Court's conclusion. In *Soldal*, the Court concluded that the alleged seizure and removal of appellants' mobile home under the

supervision of law enforcement officials constituted a seizure within the meaning of the Fourth Amendment. 506 U.S. at 72. To reach that conclusion, the Court relied on the text of the Amendment and its prior precedent, finding that "the Amendment protects property as well as privacy." *Id.* at 62. As prior decisions illustrated, that protection was limited to the home and surrounding area. *See id.* at 62 n.7 ("In holding that the Fourth Amendment's reach extends to property as such, we are mindful that the Amendment does not protect possessory interests in all kinds of property. This case, however, concerns a house, which the Amendment's language explicitly includes, as it does a person's effects." (internal citation omitted)). In short, because *Soldal* concerned the seizure of a home, the Fourth Amendment was implicated. *James Daniel Good Real Property* reinforces that conclusion. *See* 510 U.S. at 49–52 (holding that the seizure of a home in civil forfeiture proceedings implicated the Fourth Amendment and Fifth Amendment and that the home owner could seek vindication of his rights under both Amendments).

Here, Plaintiff's claim was futile because, unlike *Soldal* and *James Good Real Property*, this case does not concern the alleged seizure of a home or curtilage. Because basic legal research would have demonstrated as much, an award of attorney's fees is appropriate here.

### b. Equal Protection – Fourteenth Amendment

Plaintiff also previously alleged that it "has been singled out for adverse, irrational government action by the City of Dublin in violation of the Equal Protection Clause of the Fourteenth Amendment" because Defendants "did not remove the driveways of the other properties on Riverside Drive when it appropriated their land for a bike path." (Doc. 13, ¶ 65(c)).

The Fourteenth Amendment provides, in relevant part, that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every

person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citation and quotations omitted). "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Warren*, 411 F.3d at 710 (citing *Olech*, 528 U.S. at 564). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Cahoo*, 912 F.3d at 905 (citation and quotations omitted).

In articulating its Equal Protection claim, Plaintiff's initial Amended Complaint relied on a formulaic recitation of the elements rather than substantive factual allegations. (*See, e.g.*, Doc. 13, ¶ 65(b) ("CHKRS has been deprived of those property interests, including a safe useable driveway access to Riverside Drive and the ability to develop the property to its highest and best use, by discriminatory treatment in comparison with other similarly situated persons because Dublin seized CHKRS driveway, removed it and installed a driveway which does not comply with its Codes or the laws of the State of Ohio for ingress and egress to a state highway and which is dangerous because it fails to provide adequate sight distance"); *id.*, ¶ 65 (c) ("CHKRS has been singled out for adverse, irrational government action by the City of Dublin in violation of the Equal Protection Clause of the Fourteenth Amendment."); *id.*, ¶ 65(d) ("Dublin has no rational basis for the discriminatory treatment of CHKRS"). Plaintiff's arguments in support of its claim were similarly conclusory. (*See, e.g.*, Doc. 11 at 9–10 ("Dublin did not move the driveway of any other affected property after installing the bike path. . . . There was no legitimate purpose to remove the

driveway and replace it with an unsafe and unusable driveway. . . . There was no rational basis to treat CHKRS' property differently.").

In short, Plaintiff did not allege facts showing that it was similarly situated to the other property owners along Riverside Drive whose property was appropriated for the construction of the bike path and whose driveways were not moved or altered by Defendants. *Cf. Warren*, 411 F.3d at 710 ("Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." (citing *Olech*, 528 U.S. at 564)). Nor did it articulate facts that demonstrate that there was no rational basis for Defendants' actions. *Cf. Warren*, 411 F.3d at 710 (citing *Olech*, 528 U.S. at 564). Indeed, Plaintiff made no effort to "negat[e] every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Cahoo*, 912 F.3d at 905 (citation and quotations omitted). As such, Plaintiff's proposed amendment was meritless.

In sum, seeking to add these two claims caused Defendants undue expense. Consequently, Plaintiff's leave to file the proposed Amended Complaint is conditioned on compensating Defendants for the attorney's fees they incurred responding to those claims. The parties are **ORDERED** to meet and confer on a reasonable fee for Defendants' briefing on these two issues. Once compensation has been made, Plaintiff shall file a notice of compliance. The Clerk then will docket Plaintiff's Amended Complaint for Permanent Injunctive Relief, Declaratory Judgment, and Damages (Doc. 24 at 6–32; Docs. 24-1–24-6) as the First Amended Complaint.

### III.  MOTION TO DISMISS (Doc. 10) AND FIRST MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (Doc. 13)

In light of the Court granting Plaintiff's Second Motion for Leave to File Amended Complaint (Doc. 24), Defendants' Motion to Dismiss (Doc. 10) and Plaintiff's First Motion for

Leave to File Amended Complaint are **DENIED as moot**. As detailed above, the Court has, nonetheless, considered the parties' briefing on those Motions when ruling on Plaintiff's Second Motion for Leave to File Amended Complaint.

## IV. POTENTIAL MEDIATION

Absent good cause, the Court will not permit further amendment of the complaint. The parties, therefore, now know what this case is about and should be able to evaluate the costs and benefits of continuing to litigate this action. The parties are **ORDERED** to consider whether mediation would be productive. On or before **September 6, 2019**, the parties shall submit a joint status report that: (1) informs the Court if they intend to mediate and whether the Court needs to appoint a mediator for this case; and (2) includes a proposed scheduling order that will ensure the prompt and efficient resolution of this case.

When preparing the joint status report, the parties may wish to consider the following observations. First, Defendants have previously informed the Court of their intention to file a motion to disqualify co-counsel for Plaintiff, Ms. Karen Lynn Edwards-Smith. As represented to the Court, Ms. Edwards-Smith is the spouse of Mr. Robert G. Smith, the managing member of Plaintiff and the driving force behind this lawsuit.

> Generally, a lawyer may not act as an advocate in a matter in which the lawyer is likely to be a "necessary witness." Ohio Prof. Cond. R. 3.7(a). A necessary witness is not simply one who provides relevant or even highly useful testimony. *Akron v. Carter*, 942 N.E.2d 409, 416 (Ohio Ct. App. 2010) (citation omitted). Rather, a necessary witness is one who provides testimony that is material and relevant to the issues being litigated and that the evidence is unobtainable elsewhere. *Id.* The Court should consider "the significance of the matters, weight of the testimony and availability of other evidence. A party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." *Id.*

*Whitacre v. Nations Lending Corp.*, No. 5:19CV809, 2019 WL 3458470, at *2 (N.D. Ohio July 30, 2019). Under the standard articulated above, Defendants have a plausible argument that Ms.

Edwards-Smith is subject to disqualification here. *See, e.g.*, *Glazer v. Reimer Law Co.*, No. 1:09-cv-1262, Doc. 211 (N.D. Ohio Nov. 2, 2015) (disqualifying plaintiff's attorney-wife from representing him, in part, because she was a necessary fact witness); *Reo v. University Hospitals Health Systems*, — N.E.3d —, 2019 WL 1601647, at *6–11 (Apr. 15, 2019) (affirming district court order disqualifying counsel from representing a spouse in a civil action on the basis the attorney is a "necessary trial witness" per Ohio Rule of Professional Conduct 3.7); *Horen v. Toledo Pub. Sch. Dist. Bd. of Educ.*, 882 N.E.2d 14, 18–20 (Ohio App. 6th Dist. 2007) (affirming district court's disqualification of counsel from representing her husband and child because she would be "providing substantial factual testimony that is central to" the case). The Court considers this a threshold issue. If the parties are unable to resolve this action through mediation, the Court will set an expedited briefing schedule to address the disqualification issue.

Second, this case was filed in November 2018, and the current discovery deadline is October 1, 2018, (Doc. 18). The Court understands that the parties have yet to begin discovery. While the Court is willing to grant a reasonable extension of the discovery deadline, any such extension will be limited given the length of time that this case has been pending.

Third, in their Response in Opposition to Plaintiff's Second Motion for Leave to File Amended Complaint, Defendants have attached communications from Mr. Smith to counsel for Defendants. (*See* Doc. 25-1). Although Defendants cite these communications as evidence of Plaintiff's bad faith, the Court views them as evidence of a lack of civility. The Court, therefore, reminds the parties and their respective counsel of their obligation to treat one another with respect and common courtesy. Counsel and the parties shall conduct themselves accordingly.

**V.      CONCLUSION**

For the foregoing reasons, Plaintiff's Second Motion for Leave to File Amended Complaint (Doc. 24) is **GRANTED** conditioned on the terms set forth in this Opinion and Order.  Further, Defendants' Motion to Dismiss (Doc. 10) and Plaintiff's First Motion for Leave to File Amended Complaint (Doc. 13) are **DENIED as moot**.  In addition, the parties are to notify the Court by September 6, 2019, as to whether they intend to pursue mediation.

IT IS SO ORDERED.


Date:   August 22, 2019                                /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE