**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


**CHKRS, LLC,**

        **Plaintiff,**

    **v.**                              **Civil Action 2:18-cv-1366**

                                              **Magistrate Judge Kimberly A. Jolson**

**THE CITY OF DUBLIN, OHIO, et al.,**

        **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 42), Defendants' Motion to Strike Supplemental Memorandum (Doc. 48), and Defendants' Motion to Disqualify Karen Edwards-Smith as Plaintiff's Counsel (Doc. 32). For the following reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 42) is **GRANTED**, Defendants' Motion to Strike Supplemental Memorandum (Doc. 48) is **GRANTED**, and Defendants' Motion to Disqualify Karen Edwards-Smith as Plaintiff's Counsel (Doc. 32) is **DENIED as moot**.

## I.    BACKGROUND

The Court has previously summarized the background of this case. (*See* Doc. 27 at 1–3). Relevant here, in July 2015, Plaintiff entered into a three-year lease (the "Lease") with an option to purchase the property at 6310 Riverside Drive (the "Property") from its then owner, Ms. Karen Friedman. (Doc. 38, ¶ 15). Several months later in September 2015, Defendant the City of Dublin, Ohio ("Dublin") "sued to appropriate a permanent bike path easement and a temporary construction easement" on the Property. (*Id.*, ¶ 17).

The parties, along with Ms. Friedman, litigated the appropriation in the Franklin County Court of Common Pleas, the Ohio Tenth District Court of Appeals, and the Ohio Supreme Court

(the "State Court Action"). (*Id.*, ¶¶ 17–22, 34, 37–39). In the state trial court, the City of Dublin moved to appropriate "a permanent easement and a temporary easement … for the public purpose of constructing roadway improvements at the intersection of State Route 161 and Riverside Drive, and a shared-use path adjacent to Riverside Drive." *City of Dublin v Friedman, et al.*, Case No. 15 CV 008664, Am. Compl. for Appropriation, ¶ 8 (Ohio Com. Pl. Oct. 21, 2015). Consistent with the requirements of the Ohio Revised Code, the City of Dublin hired an independent appraiser to determine the value of the property interest in the desired easement and deposited that amount into an escrow account. *Id.*, ¶¶ 10–11.

Ms. Friedman subsequently moved to withdraw the City of Dublin's escrow deposit. *See id.*, Mot. to Withdraw Deposit (Ohio Com. Pl. Nov. 30, 2015). CHKRS responded and requested that the Court "hear evidence as to CHKRS [sic] interest and make distribution of the deposit of the City of Dublin accordingly." *Id.*, Br. in Resp. to Mot. for Disbursement at 3 (Ohio Com. Pl. Dec. 9, 2015).

The trial court directed the parties to brief the issue of "a so-called eminent domain clause in the lease." *Id.*, Journal Entry at 1 (Ohio Com. Pl. Mar. 9, 2016). That provisions states: "Any monies dispersed by the City of Dublin or ODOT are payable to Karen Michelle Friedman until the Lessee has procured on the purchase option." (Doc. 38-1, ¶ 31). The Court summarized Ms. Friedman's argument regarding this clause:

> [T]he option in the lease to tenant CHKRS, LLC has not been exercised, and ¶ 31 of the lease is an "eminent domain clause" that sets out what occurs in the event of a land condemnation proceeding. Beyond that, if the court rules that ¶ 31 (or other legal rules) govern and effectively vest the condemnation award in the owner Ms. Friedman, then she and the plaintiff have already agreed upon a final settlement of this case.

*City of Dublin v Friedman, et al.*, Case No. 15 CV 008664, Journal Entry at 1–2 (Ohio Com. Pl. Mar. 9, 2016) (footnote omitted).

The parties briefed the issue as directed by the trial court. Relying on that provision, Ms. Friedman argued that CHKRS had no compensable interest in the Property. *See id.*, Hr'g Br. at 2 (Ohio Com. Pls. Mar. 11, 2016) ("Because it is undisputed that CHKRS did not procure on its option to purchase the Property by the date of take in this matter …, the plain language of the Lease provides that all of the monies associated with Dublin's appropriation must be distributed to Friedman."). CHKRS disputed Ms. Friedman's position, arguing that it was contrary to the plain language of the contract and that it would "den[y] CHKRS the benefit of its bargain." *Id.*, Hr'g Br. and Br. in Opp. at 3 (Ohio. Com. Pl. Mar. 18, 2016). Moreover, CKHRS emphasized, it had procured on the purchase option and, therefore, it was entitled to compensation. *Id.* at 3–4.

CHKRS' first attempt at establishing a compensable interest in the Lease was unsuccessful. In its June 3, 2016 Opinion and Journal Entry, the Court rejected CHKRS argument and concluded that, because CHKRS had not procured on the purchase option, it was not entitled to compensation for the appropriation of the bike path easement pursuant to ¶ 31 of the Lease. *Id.*, Op. and Journal Entry at 7–9 (Ohio Com. Pl. June 3, 2016). It found that Ms. Friedman was "entitled to withdraw Dublin's $25,080 deposit" and granted her motion to withdraw deposit as a result. *Id.* at 9. Shortly thereafter, the trial court entered its Final Judgment Entry, granting Ms. Friedman's motion to withdraw deposit. *City of Dublin v Friedman, et al.*, No. 15CV0908664, 2016 WL 11513379 (Ohio Com. Pl. June 16, 2016).

CHKRS' second bite at the apple fared no better. In its appeal to the Tenth District Court of Appeals, CHKRS explicitly challenged (1) the trial court's interpretation of ¶ 31 of the Lease and (2) its finding that CHKRS failed to procure on the Lease's purchase option. *See City of Dublin v Friedman, et al.*, 16-AP-000516, Appellant's Br. at viii (Ohio Ct. App. Sept. 18, 2016) ("**Assignment of Error No. 1** Whether the trial court properly found that CHKRS did not exercise

its option to purchase the property, when there was no issue as to that fact before the Court ….

**Assignment of Error No. 2** Whether paragraph 31 of the lease is clear and unambiguous such that its interpretation is a matter of law. Whether the lease agreement CHKRS has procured on the purchase option and is entitled to a credit against the purchase price for the funds disbursed to Friedman. Whether CHKRS, LLC has the right to defend its property interests in the eminent domain proceedings."). CHKRS argued at length that, as the lessee, it had a compensable interest in the Property and that ¶ 31 of the Lease did not alter its entitlement to compensation or its ability to challenge the City of Dublin's appropriation. *Id.* at 14–23.

The Ohio Tenth District Court of Appeals disagreed. *See City of Dublin v. Friedman*, 101 N.E.3d 1137 (Ohio Ct. App. 2017). It summarized Ohio law regarding lessees' entitlement to compensation:

> Generally, a tenant does have a property right in the leasehold and, in the absence of an agreement to the contrary, is entitled to compensation if it is appropriated by eminent domain. However, there is nothing to prevent the parties from changing their respective rights by agreement. Thus, it is the agreement of the parties that controls whether the lessee has a compensable property interest in the appropriated property.

*Id.* at 1151 (internal citations and quotations omitted). In light of ¶ 31 of the Lease, the court of appeals concluded that "Friedman and CHKRS provided that CHKRS, as a lessee, would not have a compensable interest if the property was appropriated by Dublin or Ohio Department of Transportation." *Id.* CHKRS appealed that decision to the Ohio Supreme Court, which declined jurisdiction. *See City of Dublin v. Karen Michelle R. Friedman, et al.*, Case No. 2018-0164, Entry (Ohio May 23, 2018) (declining jurisdiction); *id.*, CHKRS' Mem. in Support of Jurisdiction at 10–12 (Ohio Jan. 31, 2018) (challenging the lower court's interpretation of ¶ 31 of the Lease); *id.*, Notice of Appeal (Ohio Jan. 31, 2018). In short, multiple state courts considered CHKRS' argument that it had a compensable interest in the Property and rejected it.

While the State Court Action was pending, in November 2015, Defendant Dublin began construction on the Property and "over several months, cleared and regraded the property; constructed a wall separating the property from the bike path and the street that obstructed visibility of pedestrians and bicycles on the bike path, and vehicles on Riverside Drive; and removed the existing driveway access to Riverside Drive." (Doc. 38, ¶ 11). On two subsequent occasions, in July and November 2016, Defendant Dublin reentered the Property and, without Plaintiff's permission, performed additional construction work on the portion of the driveway adjacent to Riverside Drive (the "Driveway"). (*Id.*, ¶ 43–44). As a result of Defendant Dublin's actions, Plaintiff alleges, the Driveway "is unsafe" and not usable. (*See id.*, ¶¶ 48, 50, 56).

On July 31, 2018, Ms. Friedman transferred ownership of the Property to Plaintiff. (Doc. 38-2 at 2). Several months later, Plaintiff filed this action. (*See* Doc. 2). In the First Amended Complaint, Plaintiff brings a procedural due process claim, a substantive due process claim, and a takings claim based on Defendants' alleged seizure and removal of the Driveway in July and November 2016. (*Id.*, ¶¶ 68–76).[1] Defendants filed their Motion for Judgment on the Pleadings (Doc. 42) and Motion to Strike Supplemental Memorandum (Doc. 48), which are fully briefed and now ripe for resolution.

## II.  MOTION FOR JUDGMENT ON THE PLEADINGS

The Court first addresses Defendants' Motion for Judgment on the Pleadings (Doc. 42).

### A.  Standard of Review

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

---

[1] Plaintiff has made clear that, in this action, it is not challenging Defendant Dublin's 2015 appropriation of the bike path easement that was the subject of the State Court Action. (*See* Doc. 45 at 10 ("Dublin's appropriation of a temporary construction easement and a permanent bike path easement from Friedman is not the subject of this action. CHKRS is not seeking further compensation from Dublin for that appropriation.")).

P. 12(c). "Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law." *Williamson v. Recovery Ltd. P'ship,* No. 2:06-CV-292, 2010 WL 3769136, at *2 (S.D. Ohio Sept. 24, 2010) (citations omitted).

In examining a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999). Accordingly, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). To survive a motion for judgment on the pleadings, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop*, 520 F.3d at 519 (internal quotation marks omitted). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B.    Discussion**

Defendants move for judgment on the pleadings, raising a number of arguments in support. (Doc. 42). First, they contend that Karen Friedman, the former owner of the Property, is the real party in interest because only she can be compensated for claims arising from allegations of a taking of the Property. (*Id.* at 7). Second, they argue that Plaintiff's due process claims are ancillary to its takings claim under the Fifth Amendment of the United States Constitution. (*Id.* at 7–8). Third, they maintain that Plaintiff lacks standing to brings its takings claim. (*Id.* at 8–13).

1. *Takings Claim*

Although Defendants' arguments overlap, their central theme is clear: Under the Lease, Plaintiff did not have a property interest protected by the Fifth Amendment at the time of the alleged takings in July and November 2016. (*See generally* Doc. 42).

"Article III limits the judicial power to resolving actual 'Cases' and 'Controversies,' not theoretical questions." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020) (quoting U.S. Const. art. III, § 2). "And one 'telltale' of a case or controversy is that 'the parties have standing to bring it.'" *Buchholz*, 946 F.3d at 860–61 (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," and its "doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

Generally speaking, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision," in order to establish standing. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)). "The plaintiff carries the burden of establishing those three elements, and at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Buchholz*, 946 F.3d at 861 (citing *Spokeo*, 136 S. Ct. at 1547).

More specifically, under the Takings Clause, "a plaintiff must have a protected property interest in the relevant property," in order to establish standing. *UMC Dev., LLC v. D.C.*, 401 F. Supp. 3d 140, 151 (D.D.C. 2019) (citing *Rumber v. District of Columbia*, 595 F.3d 1298, 1300–01 (D.C. Cir. 2010) (per curiam)). [T]he Constitution neither creates nor defines the scope of property interests compensable under the Just Compensation Clause." *Coal. for Gov't*

*Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004). "Rather, 'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Id.* (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992)).

Relevant here, "[l]easehold interests, in addition to ownership interests, are protected property interests under the Takings Clause." *Martell v. City of St. Albans, Vermont*, No. 2:19-CV-93-JMC, 2020 WL 871698, at \*10 (D. Vt. Feb. 21, 2020) (citing *Alamo Land & Cattle Co., Inc. v. Arizona*, 424 U.S. 295, 303 (1976)); *see also Devines v. Maier*, 665 F.2d 138, 141 (7th Cir. 1981) ("As the district court stated, leasehold interests are property interests protected by the Fifth Amendment."). Consequently, when the government appropriates a leasehold interest, the lessee is entitled to just compensation. *See Alamo Land & Cattle Co.*, 424 U.S. at 303 ("It has long been established that the holder of an unexpired leasehold interest in land is entitled, under the Fifth Amendment, to just compensation for the value of that interest when it is taken upon condemnation by the United States."); *Blood v. Hartland Twp.*, 2005 WL 1793767, at \*3 (Ohio Ct. App. July 29, 2005) ("It is well-settled law that a lessee has standing to pursue a takings claim where the leasehold interest was appropriated, and the lessee may assert claims for damages and receive compensation for resulting losses."); 2 *Nichols on Eminent Domain,* § 5.02[6] ("Courts have held that lessees for years, from year to year, or by statute ... have such an interest in property as to be classed as 'owners' in the constitutional sense, and are entitled to compensation for the taking of their interest.").

But another foundational principle is pertinent to resolving this case: Parties may limit their rights by contract. *See City of Cincinnati v. Spangenberg*, 35 Ohio App. 2d 168, 171, 300

N.E.2d 457, 460 (Ohio Ct. App. 1973) ("It is the agreement of the parties that controls whether the lessee has a compensable property interest in the appropriated property."); *City of Columbus v. Huntington Nat. Bank*, 143 N.E.2d 874, 877 (Ohio Ct. App. 1956) ("We think it is not to be controverted that a landlord and tenant may, by a properly worded contract, provide that the tenant shall receive no compensation when the leased premises are taken by right of eminent domain. It also is not subject to dispute that a landlord and tenant may, by a properly worded contract, provide that in the event the leased premises are taken by condemnation proceedings, the lease shall terminate. These rules are so elementary that they need no citation of authority to support them[.]"); 138 Am. Jur. Proof of Facts 3d 301 ("If a lease contains an express provision that in event of condemnation the lessee may have no part of award, parties have fixed their rights by contract, and lessee takes nothing upon condemnation of property.").

The parties dispute whether that occurred here. As noted earlier, in interpreting the Lease, the Ohio Tenth District Court of Appeals concluded that, "[t]hrough ¶ 31 of the lease, Friedman and CHKRS provided that CHKRS, as a lessee, would not have a compensable interest if the property was appropriated by Dublin or Ohio Department of Transportation." *City of Dublin v. Friedman*, 101 N.E.3d 1137, 1151 (Ohio Ct. App. 2017). Defendants maintain that issue preclusion applies, and Plaintiff lacks standing to bring a takings claim because of its lack of compensable interest in the Property. (Doc. 42 at 9–12).

In resolving Defendants' issue preclusion argument, the Court applies Ohio law. Under the Constitution's Full Faith and Credit Clause, and the Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). When a party relies on a prior state

court action as the basis for its res judicata argument, courts "look to the state's law to assess the preclusive effect it would attach to that judgment." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citation and internal quotations omitted).

In Ohio, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citing *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995)). "Issue preclusion … serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies." *O'Nesti*, 862 N.E.2d at 806 (citing *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 692 N.E.2d 140, 144 (Ohio 1998)). It "applies even if the causes of action differ." *O'Nesti*, 862 N.E.2d at 806 (citing *Fort Frye Teachers Assn.*, 692 N.E.2d at 144).

Issue preclusion has four elements under Ohio law:

(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action;

(2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

(4) The issue must have been identical to the issue involved in the prior suit.

*Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 531 (6th Cir. 2018) (citing *Monahan v. Eagle Picher Indus., Inc.*, 486 N.E.2d 1165, 1168 (Ohio Ct. App. 1984)). "The party asserting the defense bears the burden of proof." *Boggs*, 655 F.3d at 520 (citing *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009)).

At the outset, the Court notes a problem with Plaintiff's response to Defendants' Motion: It does not directly address Defendants' issue preclusion argument, (*see generally* Doc. 45). But an impartial review of the record from the State Court Action demonstrates that the application of issue preclusion is appropriate here.

First, there is no dispute that Plaintiff was a party to the prior action. *See City of Dublin v. Friedman*, 101 N.E.3d 1137 (Ohio Ct. App. Dec. 19, 2017) (affirming decision of trial court and overruling Plaintiff's appeal); *City of Dublin v. Friedman, et al.*, No. 15CV0908664, 2016 WL 11513379 (Ohio Com. Pl. June 16, 2016) (entering final judgment entry concerning dispute between Plaintiff, Defendant City of Dublin, and Karen Friedman).

Second, there was a final judgment on the merits in the State Court Action after Plaintiff had a full and fair opportunity to litigate the issue. Relying on ¶ 31 of the Lease, Ms. Friedman argued that Plaintiff lacked a compensable interest in the Property. *See City of Dublin v Friedman, et al.*, Case No. 15 CV 008664, Hr'g Br. at 2 (Ohio Com. Pls. Mar. 11, 2016). Plaintiff repeatedly contested that argument in the state trial court, state appellate court, and the Supreme Court of Ohio. *See, e.g.*, *City of Dublin v. Karen Michelle R. Friedman, et al.*, Case No. 2018-0164, CHKRS' Mem. in Support of Jurisdiction at 10–12 (Ohio Jan. 31, 2018); *City of Dublin v. Friedman*, 16-AP-000516, Appellant's Br. at viii (Ohio Ct. App. Sept. 18, 2016); *id.* at 14–23; *City of Dublin v. Friedman, et al.*, Case No. 15 CV 008664, Hr'g Br. and Br. in Opp. at 3 (Ohio. Com. Pl. Mar. 18, 2016). Further, there is no dispute that there was a final judgment on the merits in the State Court Action. *See City of Dublin v. Karen Michelle R. Friedman, et al.*, Case No. 2018-0164, Entry (Ohio May 23, 2018) (declining jurisdiction); *City of Dublin v. Friedman*, 101 N.E.3d 1137 (Ohio Ct. App. 2017) (affirming trial court's final judgment); *City of Dublin v*

*Friedman, et al.*, No. 15CV0908664, 2016 WL 11513379 (Ohio Com. Pl. June 16, 2016) (Final Judgment Entry).

Third, the issue of whether Plaintiff had a compensable property interest in the Lease was actually tried and decided and was necessary to the final judgment in the State Court Action. As discussed above, Plaintiff repeatedly and forcefully argued that it had a compensable property interest in the Property, and state courts repeatedly concluded otherwise. *See, e.g.*, *Friedman*, 101 N.E.3d at 1151. Nor can Plaintiff dispute that issue was necessary to the State Court Action. As part of its Final Judgment Entry, the trial court granted Ms. Friedman's motion to withdraw deposit based on its holding that Plaintiff lacked a compensable property interest in the Property, which the appeals court affirmed. *See id.*; *Friedman*, 2016 WL 11513379. Without that holding as to the issue of Plaintiff's compensable property interest in the Lease, the final judgment in the State Court Action could not stand.

Finally, the issue presented in this case is the same as the issue presented in the State Court Action: Whether Plaintiff has a compensable property interest in the Lease. A comparison of the parties' briefing here with the briefing in state court as well as the state court decisions make clear that the issues are the same. Indeed, they are identical.

In sum, the State Court Action provided Plaintiff a full and fair opportunity to litigate whether it had a compensable property interest in the Property. Multiple state courts of competent jurisdiction reviewed the Lease and the relevant state law and concluded that it did not, which was necessary to the final judgment. Because the identical issue has been raised again here, the Court is bound by the state courts' conclusion regarding the same. *See O'Nesti*, 862 N.E.2d at 806 (citing *Fort Frye Teachers Assn.*, 692 N.E.2d at 144).

That conclusion leads us back to the issue of standing. This Court is bound by Ohio state courts' finding that Plaintiff, a tenant under the Lease, did not have a compensable property interest in the Property if it was appropriated by Defendant Dublin. Because Plaintiff did not have a compensable property interest under the Lease, Plaintiff lacks standing to bring a takings claim for Defendants' alleged seizure of the Driveway in July and November 2016. *See UMC Dev., LLC*, 401 F. Supp. 3d at 151 (citing *Rumber*, 595 F.3d at 1300–01) (holding that, to establish standing for a takings claim, "a plaintiff must have a protected property interest in the relevant property."); *accord Coal. for Gov't Procurement*, 365 F.3d at 481 (citation omitted) ("First, the court must examine whether the claimant has established a cognizable 'property interest' for the purposes of the Just Compensation Clause."). The Court will dismiss Plaintiff's takings claim accordingly.

Although difficult to follow at times, Plaintiff's argument to the contrary is unpersuasive. It insists that it was an equitable owner of the Property at the time of the alleged takings of the Driveway and that it "had a protected property right in its leasehold interest" and "in the option to purchase the property." (Doc. 45 at 4). But this argument ignores the fact that a court of competent jurisdiction considered Plaintiff's argument[2] and, nonetheless, found that it did "not have a compensable interest if the property was appropriated by Dublin or Ohio Department of Transportation." *Friedman*, 101 N.E.3d at 1151. Because the application of issue preclusion resolves this argument, the Court need not address it further here.

---

[2] Plaintiff raised this same argument in its briefing before the Ohio Tenth District Court of Appeals. *See City of Dublin v Friedman*, 16-AP-000516, Appellant's Br. at 16–23 (Ohio Ct. App. Sept. 18, 2016) (arguing that CHKRS, as the equitable owner of the property had a protected property interest in the Lease); *id.*, Appellant's Reply Br. at 5–7 (Ohio Ct. App. Nov. 29, 2016) (same).

## 2.     Due Process Claims

Defendants move to dismiss Plaintiff's due process claims.  (Doc. 42 at 7–8).  And, as Defendants point out, (*see* Doc. 46 at 2), Plaintiff failed to respond to this argument, (*see generally* Doc. 45).

That failure has consequences.  Failure to respond to a motion seeking dismissal of a claim constitutes an abandonment of that claim.  *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) (citation, quotations, and alteration omitted) ("When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived."); *Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (holding that failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [such] claim"); *Scott v. State of Tenn.*, No. 88-6095, 1989 WL 72470, at *2 (6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *Bushong v. Delaware City Sch. Dist.*, No. 2:19-CV-858, 2020 WL 419754, at *7 (S.D. Ohio Jan. 27, 2020) (collecting cases) ("Defendants argue Plaintiff fails to allege an independent constitutional violation. Plaintiff fails to respond to this argument, and as such, waives it."); *Conrad v. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 791–92 (S.D. Ohio 2019) ("[The plaintiff] does not refute [the defendant's] characterization of [the claim], nor does [the plaintiff] respond in any way to [the defendant's] argument that this claim should be dismissed. Thus, [the plaintiff] appears to concede this point and waives opposition to dismissal of this claim"); *Morris v. Amazon.com Servs., Inc.*, No. 3:19-CV-00056, 2019 WL 3349970, at *1 (S.D. Ohio July 24, 2019), *report and recommendation adopted sub nom. Morris v. Amazon*, No. 3:19-CV-56, 2019 WL 4621964 (S.D. Ohio Sept. 24, 2019) (collecting cases) ("Plaintiff's failure to respond to Amazon's Motion to

Dismiss indicates that she has waived and abandoned her claims against Amazon."). In failing to respond to Defendants' Motion, Plaintiff has abandoned its due process claims, and the Court will dismiss them accordingly.

Two additional factors support dismissal of Plaintiff's due process claims. First, despite Plaintiff's numerous opportunities to clarify the nature of its due process claims and to distinguish them from its takings claim, Plaintiff has never done so. To the contrary, Plaintiff's pleadings and arguments in this case have consistently reinforced the conclusion that Plaintiff's takings and due process claims are essentially interchangeable. (*See, e.g.*, Doc. 2, ¶¶ 50–55 (alleging due process violations); Doc. 13, ¶¶ 58–63 (alleging due process violations as part of First Motion for Leave to File Amended Complaint); Doc. 24, ¶¶ 68–76 (alleging due process and takings violations as part of Second Motion for Leave to File Amended Complaint); Doc. 38, ¶¶ 68–76 (alleging due process and takings violations as part of First Amended Complaint). Second, Plaintiff's due process claims require it to demonstrate that Defendants deprived it of a protected property interest. *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019) (citing *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008)) (holding that, to establish a procedural due process claim, a plaintiff must establish three elements: "(1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights"); *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707–08 (6th Cir. 2005) (holding that a violation of substantive due process "occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest"). But according to Ohio state courts, Plaintiff lacked a compensable property interest in the Property at the time of the alleged takings. *See Friedman*,

101 N.E.3d at 1151.  As a result, even if it reached the merits, the Court is skeptical that Plaintiff

has alleged facts sufficient to establish a due process claim.

## IV.       MOTION TO STRIKE SUPPLEMENTAL MEMORANDUM

Citing the Court's Local Rules, Defendants move to strike Plaintiff's Supplemental

Memorandum, arguing that it is an impermissible sur-reply.  (*See* Doc. 48).

The Court agrees.  The Local Rules provide for filing an opposition to a motion and a reply

in support as a matter of course.  S.D. Ohio L.R. 7.2(a)(2).  Those same Rules explicitly provide

that, "[n]o additional memoranda beyond those enumerated are permitted except upon leave of

court for good cause shown."  *Id.*

Despite that clear statement, Plaintiff nonetheless filed its purported Supplemental

Memorandum (Doc. 47) shortly after Defendants filed their Reply (Doc. 46).  Plaintiff did so

without leave of the Court and, in the purported Supplemental Memorandum, makes no effort to

establish good cause for the filing of this additional memorandum.  Instead, it asserts that the

Supplemental Memorandum is in "response to the Court's request that CHKRS, LLC define the

scope and nature of its three remaining claims - a taking's claim, a substantive due process claim,

and a procedural due process claim - against defendants."  (Doc. 47 at 1).  But throughout the

Supplemental Memorandum, Plaintiff raises arguments in opposition to Defendants' Motion for

Judgment on the Pleadings.  (*See generally* Doc. 47).  Because these arguments could have been

raised in Plaintiff's Response, and because Plaintiff does not demonstrate good cause for why they

were not presented earlier, the Court will grant the Motion to Strike.

## V.       MOTION TO DISQUALIFY KAREN EDWARDS-SMITH AS PLAINTIFF'S COUNSEL

Because the Court will grant Defendants' Motion for Judgment on the Pleadings, the

Motion to Disqualify Karen Edwards-Smith as Plaintiff's Counsel will be denied as moot.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 42) is **GRANTED**, Defendants' Motion to Strike Supplemental Memorandum (Doc. 48) is **GRANTED**, and Defendants' Motion to Disqualify Karen Edwards-Smith as Plaintiff's Counsel (Doc. 32) is **DENIED as moot**.

IT IS SO ORDERED.

Date: March 23, 2020

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE