IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHKRS, LLC,**

      **Plaintiff,**

  v.                                    Civil Action 2:18-cv-1366
                                        Magistrate Judge Kimberly A. Jolson

**THE CITY OF DUBLIN, OHIO, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter, in which the parties consented to the jurisdiction of the Undersigned pursuant to 28 U.S.C. § 636(c), (Doc. 17), is before the Court on Defendants City of Dublin and Dublin City Manager Dana McDaniel's Motion for Summary Judgment (Doc. 67) and Request to Strike Robert Smith's Affidavit (Doc. 76 at 2–5), as well as Plaintiff CHKRS, LLC's Cross Motion for Summary Judgment (Doc. 75). For the reasons that follow, Defendants' Request to Strike Robert Smith's Affidavit is **DENIED**, but their Motion for Summary Judgment is **GRANTED**. Plaintiff's Cross Motion for Summary Judgment is **DENIED**. The Clerk is directed to enter judgment in favor of Defendants.

### I.    BACKGROUND

The question before the Court is narrow: If the parties to a residential lease agree that only the property owner—not the tenant—shall be compensated in the event of an eminent domain proceeding, does the tenant have a compensable interest in that property for purposes of a Fifth Amendment takings claim? As explained, the answer is no.

\* \* \*

In July 2015, Plaintiff CHKRS, LLC ("CHKRS") leased non-party Karen Friedman's residential property (the "Property") in Dublin, Ohio (the "Lease"). (Doc. 2-1). The Lease was for a three-year term and included an option to purchase the Property. (*Id.*). Roughly three months later, Defendant the City of Dublin, Ohio ("Dublin") sued Friedman for an easement on the Property. *City of Dublin v Friedman, et al.*, Case No. 15 CV 008664, Am. Compl. for Appropriation, ¶ 8 (Ohio Com. Pl. Oct. 21, 2015). Dublin planned to construct a permanent bike path that would run through a portion of the Property. (*Id.*). As required by Ohio law, Dublin deposited the appraised value of the easement, $25,080, into an escrow account (the "Funds"). *Id.*, ¶¶ 10–11.

Importantly, the Lease between CHKRS and Friedman provided who was entitled to the Funds:

> **¶ 31 FUNDS ISSUED FROM CITY OF DUBLIN AND/OR ODOT**
>
> Any monies dispersed by the City of Dublin or ODOT are payable to Karen Michelle Friedman until the Lessee has procured on the purchase option.

(Doc. 2-1 at 4). Thus, Friedman moved to withdraw the Funds. *Friedman*, Case No. 15 CV 008664, Mot. to Withdraw Deposit (Ohio Com. Pl. Nov. 30, 2015).

Still, CHKRS wanted a share, and brought suit in state court. *See id.*, Br. in Resp. to Mot. for Disbursement at 3 (Ohio Com. Pl. Dec. 9, 2015) (asserting an "interest in the property" and requesting to share in the Funds). The parties briefed the issue and, on March 3, 2016, stipulated that CHKRS had "not exercised the option to purchase." *See id.*, Hr'g Br. at 1. So to Friedman, the answer was clear: She—and she alone—was entitled to the Funds. *See id.*, Hr'g Br. at 2 (Ohio Com. Pl. Mar. 11, 2016).

Then a wrinkle emerged. CHKRS asserted it had exercised its purchase option earlier that month. *Id.*, Hr'g Br. and Br. in Opp. at 3–4 (Ohio Com. Pl. Mar. 18, 2016). But the state court

said otherwise. CHKRS had only notified Friedman that it intended to purchase the Property but had not "procured on the purchase option"—making Friedman entitled to the Funds. Thus, the trial court granted Friedman's motion to withdraw the Funds. *City of Dublin v. Friedman, et al.*, No. 15CV0908664, 2016 WL 11513379 (Ohio Com. Pl. June 16, 2016).

CHKRS appealed. It argued—as it does now—that the Lease entitled it to a share in the compensation. *See City of Dublin v. Friedman*, 101 N.E.3d 1137, 1148 (Ohio Ct. App. 2017). The state appellate court disagreed. It noted that, as a general matter, tenants like CHKRS have "a property right in the leasehold" and are "entitled to compensation if it is appropriated by eminent domain." *Id*. at 1151 (quotation marks and citation omitted). But, as with any contract, "there is nothing to prevent the parties from changing their respective rights by agreement." *Id*. (quotation marks and citation omitted). And the court found that was precisely what Friedman and CHKRS did. *Id*. Specifically, CHKRS, as a tenant, would not be entitled to compensation from Dublin in the event of an eminent domain proceeding. *Id*. Rather, any such money would go to Friedman. *Id*. Like the trial court, the state appellate court concluded that CHKRS never "procured" on the purchase option, despite notifying Friedman of its intent to do so. *Id*. So "CHKRS was not eligible to receive money from Dublin." *Id*.

Again, CHKRS appealed. The Ohio Supreme Court declined jurisdiction. *See City of Dublin v. Karen Michelle R. Friedman, et al.*, Case No. 2018-0164, Entry (Ohio May 23, 2018) (declining jurisdiction); *id.*, CHKRS' Mem. in Support of Jurisdiction at 10–12 (Ohio Jan. 31, 2018) (challenging the lower court's interpretation of ¶ 31 of the Lease); *id.*, Notice of Appeal (Ohio Jan. 31, 2018).

While this case worked its way through the state courts, Dublin began construction on the Property. In November 2015, it removed the Property's driveway and constructed a wall

separating the Property from the new bike path and street. (Doc. 2-2). The following summer, in July 2016, Dublin performed additional construction on the Property, including building a new driveway. (Doc. 75 at 5). CHKRS asserts that Dublin neither had permission nor compensated it for this second round of work. (*Id*.). It also says that the new driveway on the Property is unsafe. (Doc. 77 at 1).

Two years later, in July 2018, CHKRS exercised its option and purchased the Property. (Doc. 66). It filed this action shortly thereafter. (Doc. 2). CHKRS alleged that Dublin violated its substantive and procedural due process rights, in addition to the Fifth Amendment Takings Clause. (*See generally* Doc. 38). Dublin, relying largely on the state court proceedings discussed above, moved for judgment on the pleadings. (Doc. 42). The Court granted its motion. It found, like the state courts, that CHKRS did not have a compensable interest in the Property at the time of the alleged takings. (*See generally* Doc. 49). So it dismissed CHKRS' takings claim for lack of standing and also dismissed CHKRS' due process claims, which CHKRS forfeited by failing to respond to Dublin's arguments on the pleadings. (*See id*.).

CHKRS appealed again. (Doc. 51). On January 4, 2021, the Sixth Circuit affirmed in part and reversed in part the Court's ruling. (Doc. 53). Specifically, it affirmed the Court's decision dismissing CHKRS' due process claims but reversed the Court's takings holding and remanded CHKRs' takings claim for further proceedings. (*See generally id*.). The Sixth Circuit's decision was narrow. It held only that CHKRS' takings claim, as pled, was not "frivolous." (*Id*. at 10–12). Thus, CHKRS had standing to bring the claim. (*Id*.). Yet, the Circuit declined to reach the merits of CHKRS' takings claim, leaving that decision to the Undersigned. (*See id*.).

Following the mandate, the Court held a status conference with the parties to discuss next steps. (Doc. 56). As agreed, the parties moved to supplement the record for purposes of summary

4

judgment briefing, and the Court added several relevant documents to the record. (*Id*.; *see also* Doc. 66). Dublin moved for summary judgment on March 31, 2021 (Doc. 67), and CHKRS filed a cross summary judgment motion on May 21, 2021 (Doc. 75). CHKRS attached to its Motion the affidavit of its managing member, Robert Smith (the "Smith Affidavit"). (Doc. 75-1). Dublin has moved to strike the Smith Affidavit. (Doc. 76 at 2–5). Both the parties' summary judgment motions and Dublin's request to strike are fully briefed and ripe for resolution.

**II.    MOTION TO STRIKE (Doc. 76 at 2–5)**

Before turning to the merits of the case, the Court first addresses Dublin's request to strike the Smith Affidavit from the record. (Doc. 76 at 2–5).

By way of background, Dublin drops a footnote in its summary judgment motion that "there has been no unlawful taking of the Property and all driveway work was conducted with the express permitted [sic] and consent of the fee owner at the time, Karen Michelle Friedman." (Doc. 67 at 1 n.1). CHKRS responds to this assertion in its brief. Specifically, CHKRS asserts that, when Dublin re-entered the Property in July 2016 to perform additional construction, Smith "told Dublin it was trespassing on the property" and, before closing on the purchase option, "specifically inquired . . . whether there was a driveway construction agreement" with Friedman. (Doc. 75 at 6). CHKRS attaches the Smith Affidavit to support these representations, in addition to an email suggesting that Friedman did not consent to the July 2016 construction. (*See id*.).

Dublin asserts that CHKRS violated this Court's directives on supplementing the record. (Doc. 76 at 3). More substantively, Dublin challenges Smith's "false claim" that it never "had an agreement" with Friedman to re-enter the property in 2016 to reconstruct the driveway on the Property. (Doc. 76 at 4). And Dublin attaches an email purporting to show that Friedman, through her lawyer, expressly consented to the 2016 construction. (Doc. 76-1).

5

Up front, the Court notes that these documents are irrelevant to whether CHKRS had a compensable interest in the Property at the time of the alleged takings. Rather, they pertain to whether Dublin's 2016 construction constituted a taking. The parties did not brief that issue, and it is not before the Court now. In any event, while the Court has the inherent authority to strike the Smith Affidavit as procedurally or substantively improper, it will not do so. Both parties have now introduced material to the record regarding whether Friedman agreed to the 2016 construction. While the documents are irrelevant to the pertinent issues in this case, they are not harassing or otherwise inappropriate. Thus, they may remain a part of the public record, and Dublin's request to strike is **DENIED**.

### III. SUMMARY JUDGMENT MOTIONS (Docs. 67, 75)

#### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the

central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### B. Discussion

The parties seek summary judgment on a single issue—whether the Lease entitled CHKRS to a compensable interest in the Property. To resolve that issue, the Court must answer a few threshold questions. To start, what is a compensable property interest? Moreover, at what point in time is that interest assessed? For example, does the Court look to when the alleged takings occurred in 2015 and 2016, as Defendants assert, or when CHKRS bought the Property in 2018, as CHKRS contends? Finally, how does the Lease change the parties' respective interests? The Court addresses each question in turn.

#### 1. Compensable Property Interest

Before the Court can define CHKRS' interest in the Property, it must narrow its focus to the relevant time period. CHKRS directs the Court to July 2018, when it purchased the Property. (Doc. 75 at 9). It says that is when it "regained" its right to compensation. (*Id.*). Defendants, on the other hand, say what matters is whether CHKRS had the right to compensation in 2015 and 2016—when the alleged takings occurred. (Doc. 67 at 11–12 (collecting authorities)).

Defendants are correct. The Court applies Ohio law to determine whether CHKRS had a compensable property interest. *See Kerns v. Chesapeake Expl., L.L.C.*, 762 F. App'x 289, 296 (6th Cir.), *cert. denied*, 139 S. Ct. 2033, 204 L. Ed. 2d 218 (2019) (citation omitted) ("A taking requires a property interest, and for that we look to state law."). And in Ohio, "'[t]he general rule is that the right to damages for the taking of land . . . is in'" only the individuals or entities with a property interest "when the taking or injury occurs, and does not ordinarily pass to a subsequent

grantee.'" *Hatfield v. Wray*, 748 N.E.2d 612, 616 (Ohio Ct. App. 2000) (alteration in original) (quoting *Steinle v. Cincinnati*, 53 N.E.2d 800, 803 (Ohio 1944)) (citing Nichols on Eminent Domain (Rev. 3 Ed.), § 5.02(5)(d) at 5–38 (noting that "[i]t is well settled that when there is a taking of property by eminent domain in compliance with law," only those with a property interest "at the time of the taking" are "entitled to compensation")).

Thus, "'if the parcel of land from which the taking is made changes hands after the taking has occurred but before the compensation has been paid, the right to receive the compensation does not run with the land.'" *Hatfield*, 748 N.E.2d at 616 (quoting *Steinle*, 53 N.E.2d at 803). So CHKRS' position that it "regained" its right to receive compensation when it purchased the property is without merit.

This means that the Court must decide whether CHKRS had a compensable interest in the Property in 2015 and 2016 when the alleged takings occurred. During that time, CHKRS was a tenant and, in Ohio, tenants generally have a compensable interest in a leased property. *See Heffner Inv., Ltd. v. Piper*, Nos. 10-07-09, 10-07-10, 2008 WL 2168781, at *9 (Ohio Ct. App. May 27, 2008) (citing *City of Cincinnati v. Spangenberg*, 300 N.E.2d 457, 459 (Ohio Ct. App. 1973)). So "in an appropriation proceeding[,] both the owner and [the tenant] may assert claims for damages and be compensated for whatever loss directly results from the appropriation." *Heffner Inv.*, 2008 WL 2168781, at *9 (citing *Spangenberg*, 300 N.E.2d at 459).

Yet, it is a "'general legal principle'" that the parties to a lease may "'chang[e] their respective rights by agreement.'" *Jackson v. McMillen*, No. 77AP-474, 1977 WL 200629, at *4 (Ohio Ct. App. Dec. 8, 1977) (quoting *Funeral Home v. Miller*, 207 N.E.2d 757, 749 (Ohio 1965)). For example, and pertinent here, "the lessee may be precluded from compensation for an appropriation based upon the terms of the lease." *Heffner Inv.*, 2008 WL 2168781, at *9 (citing

8

*Spangenberg*, 300 N.E.2d at 459). And such an "'agreement . . . controls whether the lessee has a compensable property interest in the appropriated property.'" *City of Dayton v. Steiner*, No. 10497, 1998 WL 53892, at *1 (Ohio Ct. App. May 20, 1988) (quoting *Spangenberg*, 300 N.E.2d at 459); *see also Columbus v. Huntington Nat. Bank*, 143 N.E.2d 874, 877 (Ohio Ct. App. 1956) ("We think it is not to be controverted that a landlord and tenant may, by a properly worded contract, provide that the tenant shall receive no compensation when the leased premises are taken by right of eminent domain."). As one Ohio appellate court has said, "these rules are so elementary that they need no citation of authority to support them." *Id.*

As discussed below, that is what occurred here.

> 2. *The Lease*

The parties offer competing interpretations of Paragraph 31 of the Lease. As noted, that provision provides:

> **FUNDS ISSUED FROM CITY OF DUBLIN AND/OR ODOT**
> Any monies dispersed by the City of Dublin or ODOT are payable to Karen Michelle Friedman until the Lessee has procured on the purchase option.

(Doc. 2-1 at 4).

The parties agree that the Court applies Ohio law in interpreting this provision. (*See generally* Docs. 67, 75). "Ohio courts assess leases through 'traditional rules of contract interpretation.'" *Popa v. CNX Gas Co. LLC*, No. 4:14cv143, 2014 WL 3749415, at *3 (N.D. Ohio July 30, 2014) (quoting *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 804 N.E.2d 979, 992 (Ohio Ct. App. 2004)). If the court finds the "contract clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Ind., Inc.*, 474 N.E.2d 271, 272 (Ohio 1984) (citation omitted).

9

If, however "a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Id*. at 273.

The Court has a unique advantage in interpreting Paragraph 31 of the Lease—two Ohio courts have already done so. Both found that CHKRS contracted away its right to compensation under the Lease. *See Friedman*, Case No. 15 CV 008664, Op. and Journal Entry at 9 (Ohio Com. Pl. June 3, 2016); *Friedman*, 101 N.E.3d at 1151. And because CHKRS did so, it did not have a compensable interest in the Property. *See Friedman*, Case No. 15 CV 008664, Op. and Journal Entry at 9 (Ohio Com. Pl. June 3, 2016) (concluding that, because CHKRS had not "procured" on the Property under the Lease, it was not entitled to compensation from Dublin); *Friedman*, 101 N.E.3d at 1151 (finding that the Lease expressly "provided that CHKRS, as a lessee, would not have a compensable interest if the property was appropriated by Dublin or Ohio Department of Transportation").

As explained, it is state law—not the Constitution that "define[s]" a compensable property interest. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). And two Ohio courts already have defined that interest here—they found, under the Lease, that CHKRS' had none. Principles of federalism and comity urge this Court not to re-define CHKRS' property interest. *See, e.g.*, *Catanese v. City of Trussville*, No. 2:19-CV-01517-CLM, 2021 WL 24624, at *3 (N.D. Ala. Jan. 4, 2021) (applying principles of federalism where state court held that liquor licenses do not carry property interests and thus, declining to "create[e] a distinction in state-law property interests that state courts have not").

Nevertheless, the Court, on its own, reaches the same interpretation. Paragraph 31 plainly provides that CHKRS, as a tenant, is not entitled to receive compensation in the event of an eminent domain proceeding. This clause is unambiguous, so the Court need not look to evidence

10

submitted by the parties regarding contractual intent. *Inland Refuse Transfer Co.*, 474 N.E.2d at 272.

It is worth noting that there is nothing unusual about this provision. For example, in *City of Dayton v. Steiner*, the parties to a commercial lease agreed that, in the event of a government taking, the lessee could share in the owner's compensation for certain losses, including relocation damages, inventory, signs, machinery, equipment, fixtures, and alterations. No. 10497, 1998 WL 53892, at *1 (Ohio Ct. App. May 20, 1988). But the government's eminent domain did not result in any of those losses. *Id*. So the lessee was not entitled to any other compensation awarded. *Id*. at *2. In ruling for the property owner, the court acknowledged that, generally, a lessee is entitled to share in the compensation—but the parties agreed otherwise. *Id*. And "'[i]t is the agreement of the parties that controls whether the lessee has a compensable property interest in the appropriated property.'" *Id*. (quoting *Spangenberg*, 300 N.E.2d at 459); *see also Barjul Realty, Inc. v. Joy Stores, Inc.,* No. NOS. CA76-02-0008, C, 1977 WL 199671, at *6 (Ohio Ct. App. Dec. 14, 1977) ("Conclusive of the matter is the fact that by the terms of its lease, [lessee] agreed that all compensation for a partial or complete taking of its interest in the property was to belong to [lessor][.]").

That is what happened here. The parties agreed that CHKRS, as a tenant, would not be entitled to compensation from Dublin in the event of an eminent domain proceeding. When Dublin sued for an easement in July 2015, Friedman—not CHKRS—owned the property. Thus, Dublin properly deposited the Funds with Friedman. And, in July 2016, when Dublin performed additional work on the Property, CHKRS still was a tenant under the Lease. Importantly, CHKRS does not dispute this fact. (*See* Doc. 75 at 9 (acknowledging that "CHKRS procured on the purchase option" when it "completed the sale and purchase of the property" in July 2018)). Thus,

11

even assuming Dublin should have paid for that second round of work, which it contests, CHKRS would not be entitled to that money, either.

Briefly, CHKRS makes one final attempt to assert an interest over the Property. It contends that, because it had a purchase option under the Lease, it "was [ ] an equitable owner of the land under the law in Ohio." (Doc. 75 at 15). The doctrine of equitable ownership "is not a favored doctrine and is applied only when the refusal to do so would create or perpetuate an injustice." *In re Cardinal Indus., Inc.*, 105 B.R. 834, 853–54 (Bankr. S.D. Ohio), *supplemented*, 109 B.R. 743 (Bankr. S.D. Ohio 1989) (declining to apply the doctrine of equitable ownership where it would result in a "perversion" of the doctrine).

Importantly, the state appellate court rejected CHKRS' theory. *Friedman*, 101 N.E.3d at 1151. It considered the 91-year-old case upon which CHKRS continues to rely. *Id*. (citing *Cullen & Vaughn Co. v. Bender Co.*, 170 N.E.633 (Ohio 1930)). In that case, the government compensated the defendant landlord $6,000 for the appropriation of waterpower rights. 170 N.E. at 635. Two years later, the plaintiff tenant exercised its option to purchase the property and paid the full price for the property. *Id*. The Supreme Court of Ohio concluded that the tenant was equitably entitled to a $6,000 credit for the diminished value of the property. *Id*. at 637.

CHKRS asserts it, too, should be entitled to compensation now that it owns the Property. (Doc. 75 at 15–16). But the state appellate court, quoting *Cullen* noted that, "[p]ursuant to the 'doctrine of equitable conversion,' the compensation 'paid for the land taken by the exercise of the power of eminent domain in equity represents the land and is subject to all rights of persons who had rights in the land.'" *Friedman*, 101 N.E.3d at 1151 (quoting *Cullen & Vaughn Co.*, 170 N.E. at 633). And, said the state appellate court, CHKRS did not have a compensable right in the Property because it had contracted that right away. *Friedman*, 101 N.E.3d at 1151.

CHKRS is not the first plaintiff to rely unsuccessfully upon *Cullen*. For instance, in *ISHA, Inc. v. Risser*, a commercial tenant sought compensation after the Ohio Department of Transportation appropriated the property for highway improvements. No. 1-12-47, 2013 WL 2316248, at *1 (Ohio Ct. App. May 28, 2013). The state trial court found that the tenant had "negotiated away that right" under the lease, and, moreover, the tenant's "attempt to exercise the option was ineffective since the taking had already occurred." *Id*. at *4. On appeal, the tenant relied "exclusively upon" *Cullen*. *Id*. at *6. The state appellate court found that decision to be a non sequitur because "[i]t [did not] contain[] a provision specifying the parties' respective rights in the event of an appropriations action." *Id*. at *7. This distinction was "significant" since "the default rule" generally entitles a lessee to compensation if the property is appropriated. *Id*. (citation omitted). But the parties had elected to change the default rule. They agreed that "tenant-made improvements were part of the realty belonging to the landlord, and the landlord's compensation for the fee estate was not to be reduced thereby." *Id*. Thus, the tenant was not entitled to compensation from the state for its improvements to the property. *Id*. at **8–9.

The same is true here. CHKRS and Friedman agreed that CHKRS, as a tenant, would not receive compensation in the event of an eminent domain proceeding. (Doc. 2-1 at 4). Faced with similarly clear contract language, the court in *ISHA* did not apply the doctrine of equitable ownership to rewrite the parties' contract. 2013 WL 2316248, at *9. Nor will the Court do so in this case. *See also Mun. of the City of Lorain v. Ross,* No. 2265, 1975 WL 180471, at *3 (Ohio Ct. App. Apr. 2, 1975) (distinguishing *Cullen* and finding that, "[w]hile [it] admire[d] the trial court's efforts to do equity by application of a general principle, we feel that neither he, nor we, . . . can remake the agreement," thus honoring the parties' agreement "to a formula for distribution of a condemnation award") (internal quotation marks omitted).

13

\* \* \*

In sum, CHKRS did not have a compensable interest in the Property at the time of the alleged takings, and it was not an equitable owner under Ohio law at the time. So CHKRS is not entitled to compensation; the Court need not reach the question of whether Dublin's second round of construction on the Property in July 2016 constituted a taking; and Defendants are entitled to summary judgment.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Request to Strike Robert Smith's Affidavit is **DENIED**. Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Cross Motion for Summary Judgment is **DENIED**. The Clerk is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.


Date: July 21, 2021              /s/ Kimberly A. Jolson
                                 KIMBERLY A. JOLSON
                                 UNITED STATES MAGISTRATE JUDGE